IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DISTRICT


UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )  No. 3:15-cr-00056
       vs.                     )  Knoxville, Tennessee
                               )  March 20, 2015
MAYRA EDITH BLAIR,             )  1:30 p.m.
                               )
            Defendant.         )


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE C. CLIFFORD SHIRLEY
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:      FRANK DALE, ESQ.
                        JENNIFER KOLMAN, ESQ.
                        U.S. Dept. of Justice
                        Office of U.S. Attorney
                        800 Market Street, Ste. 211
                        Knoxville, Tennessee


For the Defendant:      CHARLES CURRIER, ESQ.
                        Attorney at Law
                        Post Office Box 6
                        Knoxville, Tennessee


_____

Lynda Clark, LCR #034, RMR, CRR
Miller & Miller Court Reporters
12804 Union Road, Knoxville, Tennessee
Phone: (865) 675-1471 / FAX: (865) 675-6398
Email:  JMccon3590@aol.com

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1                        INDEX

2    PLAINTIFF'S WITNESSES                        PAGE

3    BRIAN GROVE
          Direct Examination by Mr. Dale          5
4         Cross-Examination by Mr. Currier         30
          Redirect Examination by Mr. Dale         41
5         Recross-Examination by Mr. Currier       43
          Redirect Examination by Mr. Dale         44
6
     DAVID VICENTE
7         Direct Examination by Mr. Dale          47

8


9    DEFENSE WITNESSES

10   ANABEL ORDUNA
          Direct Examination by Mr. Currier        86
11        Cross-Examination by Mr. Dale            99
          Redirect Examination by Mr. Currier     102
12
     LEONO MARTIN
13        Direct Examination by Mr. Currier       104
          Cross-Examination by Mr. Dale           108
14
     GEORGE M. COODE, JR.
15        Direct Examination by Mr. Currier       110
          Cross-Examination by Mr. Dale           114
16

17   MAYRA BLAIR
          Proffer of Testimony - Mr. Currier      120
18

19


20


21                      EXHIBITS

22   NO.    DESCRIPTION                           PAGE

23   1.    Diana Ortiz-Zarate Indictment          12

24   2.    Minute Entry - D. Ortiz-Zarate         14

25   3.    Photograph of Santa Muerte Altar       18

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1                    I N D E X (Continued)

2

3                         EXHIBITS

4    NO.   DESCRIPTION                              PAGE

5    4.    Photograph of Santa Muerte Altar         19

6    5.    Photograph of Santa Muerta               –

7    6.    E-mail from D. Barto to F. Dale          63

8    7.    E-mail from D. Barto to F. Dale          58

9    8.    E-mail from D. Barto to F. Dale          67

10   9.    Letter from M. Blair to D. Ortiz-Zarate   74

11   10.   Letter from M. Blair to D. Ortiz-Zarate   78

12   11.   Letter from D. Ortiz-Zarate to            93
           Anabel Orduna Ornelas
13
     12.   Check from The General Insurance          96
14

15

16   CLOSING ARGUMENT BY MR. DALE                   123

17   CLOSING ARGUMENT BY MR. CURRIER                131

18

19

20

21

22

23

24   (Note:  Unless otherwise provided to the court
     reporter, all proper nouns are spelled to the best
25   phonetic approximation.)

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          This cause came on for hearing on the 20th

2     day of March, 2015, in the United States District

3     Court for the Eastern District of Tennessee, Northern

4     Division, before the Honorable C. Clifford Shirley,

5     Jr., presiding.

6          The Court having been duly opened, the

7     following proceedings were had, to-wit:

8          THE COURTROOM DEPUTY:  All rise.  This

9     Honorable Court is now in session; the Honorable C.

10    Clifford Shirley, Jr., United States Magistrate

11    Judge, presiding.

12         Please come to order and be seated.

13         Criminal action 3:15-cr-46, Defendant No.

14    3, United States of America versus Mayra Blair.

15         Frank Dale is here on behalf of the

16    government.

17         Is the government present and ready to

18    proceed?

19         MR. DALE:  Present and ready, and also with

20    me is Jennifer Kolman, my co-counsel in this case.

21         THE COURT:  Mr. Charles Currier is here on

22    behalf of the defendant.

23         Is the defendant present and ready to

24    proceed?

25         MR. CURRIER:  Yes, ma'am.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1        THE COURT:  All right, Mr. Dale.  How many

2   witnesses do you anticipate calling?

3        MR. DALE:  We have two, Your Honor.

4        THE COURT:  Mr. Currier, witnesses?

5        MR. CURRIER:  Four, Your Honor.

6        THE COURT:  Okay.  Thank you.

7        All right, Mr. Dale.  Call your first

8   witness.

9        MR. DALE:  The United States calls Special

10  Agent Brian Grove.

11        THE COURT:  Mr. Grove, come forward.

12        THE COURTROOM DEPUTY:  Do you solemnly

13  swear your testimony will be the truth, the whole

14  truth and nothing but the truth, so help you God?

15        THE WITNESS:  I do.

16        THE COURTROOM DEPUTY:  Have a seat.

17        Please state and spell your name for the

18  record.

19        THE WITNESS:  My name is Brian Grove,

20  B-r-i-a-n, G-r-o-v-e.

21        THE COURTROOM DEPUTY:  Thank you, sir.

22                BRIAN GROVE,

23         having been first duly sworn, was

24          examined and testified as follows:

25              DIRECT EXAMINATION

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   BY MR. DALE:

2   Q    Special Agent Grove, could you please tell the

3   Court where you're employed.

4   A    I'm employed with the Internal Revenue Service

5   here in Knoxville, Tennessee.

6   Q    And what is your position?

7   A    I'm a Special Agent.

8   Q    And what is your experience with this case

9   presently before the Court?

10  A    The IRS started an investigation of some aspects

11  of this case back in 2012.  We began a criminal

12  investigation of this case approximately one year

13  ago.

14  Q    Okay.  And a criminal investigation of the

15  defendant, Mayra Blair, and other persons as well?

16  A    Correct.

17  Q    Okay.  And let me ask you, first of all, are

18  there persons involved in the conspiracy to the

19  charge that have not yet been indicted or have been

20  indicted and are not yet in custody?

21  A    Yeah, there are several unindicted that are

22  still out there and one that has been indicted that

23  we have not arrested yet.

24  Q    Okay.  Are some of these people non U.S.

25  citizens?

Electronically signed by Lynda Clark (601-377-188-1426)                229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   A    Yes.

2   Q    Are some of the witnesses non U.S. citizens?

3   A    Yes.

4   Q    People that could be subject to intimidation

5   because of their immigration status?

6   A    Absolutely.

7   Q    Now --

8         MR. CURRIER:  Objection to the insinuation,

9   Your Honor.  We have no power to intimidate anybody.

10  It is the government who tends to intimidate people.

11  Witness our discussion yesterday afternoon where

12  people such as this woman's husband --

13        THE COURT:  What's the legal basis for your

14  objection?

15        MR. CURRIER:  The legal basis, Your Honor,

16  is that it is suggestive to assert that there are

17  people who could -- especially and obviously by

18  implication the defendant --

19        THE COURT:  All right.  That's an argument.

20  That's not a legal objection to evidence, and so I'm

21  going to overrule the objection.

22        MR. CURRIER:  Thank you, Your Honor.

23  BY MR. DALE:

24  Q    And so there are people that will be subject to

25  intimidation because of their immigration status.  Is

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    that correct?

2    A    Yes.

3    Q    Did this conspiracy involve the use of phony

4    identification documents?

5    A    Yes.

6    Q    What kinds of documents?

7    A    Fake Guatemalan, Honduran, Mexican driver's

8    licenses, birth certificates, vaccine documentation,

9    things of that nature.

10   Q    Are these documents that were provided to the

11   defendant?

12   A    Yes.

13   Q    Did she know they were false?

14   A    Yes.

15   Q    And are the people who produced these phony

16   documents in custody?

17   A    No.

18   Q    And this conspiracy involved the preparation of

19   false tax returns.  Is that right?

20   A    That's correct.

21   Q    Obtaining Treasury checks and then cashing them.

22   Is that correct?

23   A    That's correct.

24   Q    And part of this involved providing the

25   defendant, Ms. Blair, with phony earnings information

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   and addresses to which the Treasury checks would be

2   mailed.  Is that right?

3   A    Correct, fake W-2s, fake identification

4   documents.

5   Q    And are the people that provided her those

6   documents -- are all those people in custody?

7   A    No.

8   Q    So the people that prepared the false

9   identifications, the people who provided the false

10  information, they're still out.  Is that correct?

11  A    Correct.

12  Q    Is there anything that would prevent the

13  defendant from going back to the same offense if she

14  were released?

15  A    No.

16  Q    Who is Diana Ortiz-Zarate?

17  A    Diana Ortiz-Zarate was a employee of Ms. Mayra

18  Blair's, and she ran the Alcoa location of Mayra

19  Moreno Insurance.

20       THE COURT:  You may want to spell that name

21  for the record if you'd like to get it correct.

22       MR. DALE:  Yes, sir.  And actually I'm

23  going to put a document on the overhead which will

24  help with that as well.

25  BY MR. DALE:

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    Let me go ahead and do this.  I'm going to show

2    you, Special Agent Grove, what has been marked as

3    Government Exhibit 1 and ask if you can identify it,

4    sir.

5    A    That is the Indictment we filed against Diana

6    Ortiz-Zarate.

7    Q    You'll notice that the docket number is

8    different from the docket number in this case.

9    A    That's correct.

10   Q    And she is not a defendant in this present case,

11   is she?

12   A    No.

13   Q    Okay.  And you testified that she worked for

14   Ms. Blair.

15   A    That's correct.

16            MR. DALE:  Okay.  I move to admit Exhibit 1

17   into evidence, please.

18            MR. CURRIER:  Objection, relevance.  This

19   document has not been shown to have any connection

20   with either this defendant or with the hearings today

21   which has to deal with is this defendant likely to

22   flee, is this defendant likely to either terrorize or

23   intimidate people, I presume this woman -- I don't

24   know.

25            But as I understood, she's actually in

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    jail.  She may not be now.  So I don't think she's

2    likely to be able to be physically threatened.

3    Therefore, I question the relevance of the admission

4    of this Indictment.

5              THE COURT:  You can question the relevance,

6    not make a closing argument.

7              MR. CURRIER:  Yes, sir.

8              THE COURT:  Okay.  The objection is

9    relevance.  What do you say about that?

10             MR. DALE:  I'm going to establish that very

11   quickly.

12             THE COURT:  Then I'll reserve ruling on its

13   admission until you do.

14             MR. DALE:  Absolutely.

15   BY MR. DALE:

16   Q    Let me ask you this, Special Agent Grove.  Has

17   defendant Diana Ortiz-Zarate -- has she been charged

18   with one of the same offenses that Ms. Blair was

19   charged?

20   A    Yes, she was indicted on Title 18 Section 286,

21   which is filing false claims with the government.

22   Q    Okay.  And when it says, "Entered into a

23   conspiracy with other persons," was one of those

24   persons Ms. Blair?

25   A    Yes.

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  Q    And did this Indictment arise from the work she

2  did in Ms. Blair's office?

3  A    Yes.

4           MR. DALE:  Is that sufficient, Your Honor?

5           THE COURT:  Do you have an objection now?

6           MR. CURRIER:  Yes, sir, two fold:  First of

7  all, it is said that this work occurred in

8  Ms. Blair's office.  That will be subject to proof at

9  various points.

10           THE COURT:  That's not a legal objection.

11  Do you have a legal objection?

12           MR. CURRIER:  No, Your Honor.

13           THE COURT:  All right.  That will come in.

14  I'm not ascribing it any weight or anything like

15  that.  I'm just allowing it to be admitted as

16  evidence to this gentleman's testimony.  So it will

17  come in as Exhibit 1.

18           (Exhibit No. 1 was admitted.)

19  BY MR. DALE:

20  Q    Special Agent Grove, has Diana Ortiz-Zarate

21  entered a guilty plea?

22  A    Yes.

23  Q    Did she plead guilty to a violation of Title 18

24  United States Code Section 286?

25  A    Yes.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  Q    In conjunction with the work that she did for

2  the defendant, Mayra Blair?

3  A    That's correct.

4  Q    At Mayra Blair's office?

5  A    That's correct.

6  Q    In Alcoa, Tennessee?

7  A    Yes.

8  Q    Work involving the preparation of phony income

9  tax returns at Ms. Blair's instruction?

10  A    Correct.

11  Q    I'll show you what has been marked as Government

12  Exhibit 2, and I'll ask you, sir, is this a printout

13  of a docket entry that reflects a minute entry for a

14  change of plea hearing in which Ms. Ortiz entered

15  guilty plea in the same case?

16  A    Yes.

17  Q    Okay.  The case that I just showed you the

18  Indictment for?

19  A    Correct.

20        MR. DALE:  Move to admit Exhibit 2 into

21  evidence, please.

22        THE COURT:  Are these public documents?

23  Are they on file in the case?

24        MR. DALE:  I would say most certainly they

25  are.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          THE COURT:  All right.  So any objection to

2     that?

3          MR. CURRIER:  As it appears from its face

4     that it was electronically filed -- I admit I haven't

5     seen it, but it may be in fact in ECF.

6          MR. DALE:  I will represent to the Court

7     that it is in fact in ECF.

8          MR. CURRIER:  It appears to be.

9          THE COURT:  All right.  It's just a minute

10    entry showing a guilty plea on March 12th --

11         MR. DALE:  That's correct.

12         THE COURT:  -- of this year?

13         All right.  That will come in as Exhibit 2.

14         (Exhibit No. 2 was admitted.)

15    BY MR. DALE:

16    Q    Is Diana Ortiz cooperating with the government?

17    A    Yes.

18    Q    Has she met with the government a couple times

19    to talk with us about her work she did at Mayra

20    Blair's office?

21    A    Yes, she has.

22    Q    Okay.  And is Diana Ortiz afraid of Mayra Blair?

23    A    She's mortified of Ms. Blair.

24    Q    Could you be more specific of -- well, let's do

25    this.  You testified that you met with her on a

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

```
 1    couple of occasions?

 2    A    Several times, yes.

 3    Q    Okay.  Who was there for that meeting?

 4    A    Myself, Agent Barto, agents with HSI, yourself,

 5    and Wendy Boles (phonetic) with the postal service.

 6    Q    And when you testified she's mortified, how do

 7    you know she's mortified?

 8    A    She was absolutely a blubbering mess.  She was

 9    trembling, bawling her eyes out.  I mean nose

10    running, mouth spitting.  I mean she was visibly

11    almost sick when we got to the point of talking about

12    Ms. Blair.

13    Q    And did she say why she feared Ms. Blair?

14    A    Yes.

15    Q    What was the reason?

16    A    That Ms. Blair practices witchcraft, and she's

17    terrified of that.

18              MR. CURRIER:  Hearsay.

19              MR. DALE:  Hearsay is admissible in a

20    detention hearing, Your Honor.

21              MR. CURRIER:  It is.

22              THE COURT:  All right.

23              MR. CURRIER:  However, if I may, Your

24    Honor.

25              THE COURT:  Yes, you may.
```

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. CURRIER:  And although it is admitted

2     it is normally required to have some degree of

3     relevance and ration.  The word used was mortified.

4     Mortified does not generally mean fear exactly.  It

5     means embarrassed.  And I would like to suggest to

6     the Court that it might very well be that Ms. Ortiz

7     was embarrassed because she was lying.

8          THE COURT:  Again, an argument to be made,

9     not a legal basis for an objection.

10          MR. CURRIER:  All right, sir.

11          THE COURT:  I'm going to overrule the

12     objection.

13          You may proceed.

14     BY MR. DALE:

15     Q    Special Agent Grove, if instead of saying

16     mortified, would terrified work just as well?

17     A    Horrified, terrorized, yes.

18     Q    Okay.  And you said witchcraft.  More

19     specifically was it Santa Muerte?

20     A    Well, that was part of it.

21     Q    Okay.  So S-a-n-t-a, m-u-e-r-t-e I think.  Is

22     that right?

23     A    I know how to say it.  I don't know how to spell

24     it.

25     Q    All right.  Was a search warrant executed at

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  Ms. Blair's office?

2  A    Yes, it was.

3  Q    And I'll ask you if this is a picture that was

4  taken at the search?

5            THE COURT:  Do you care to tell me when?

6            THE WITNESS:  December 16th of 2014.

7            THE COURT:  Okay.  Thank you.

8  BY MR. DALE:

9  Q    And is this a picture that was taken in

10  conjunction with the search?

11  A    Yes.

12            MR. DALE:  Okay.  I'm going to move to

13  admit Exhibit 3 into evidence.

14            THE COURT:  Okay.  Any objection?

15            MR. CURRIER:  I would again raise the

16  question of relevance.

17            THE COURT:  What's the relevance, Mr. Dale?

18            MR. DALE:  If I could ask the witness a

19  question about this, I think it could establish the

20  relevance, and then I'll move again.

21            THE COURT:  Ask him and then move again.

22  BY MR. DALE:

23  Q    Okay.  Is this a Santa Muerte altar that was at

24  Ms. Blair's office?

25  A    Yes.

Electronically signed by Lynda Clark (601-377-188-1426)                229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. DALE:  Okay.  I'll now move for

2    admission.

3          THE COURT:  Okay.  Any objection?

4          MR. CURRIER:  Yes, Your Honor.  If

5    necessary, may I voir dire the witness of his

6    knowledge of Santa Muerte, something he could not

7    spell a few moments ago?

8          THE COURT:  Certainly you can cross-examine

9    him when it comes your turn.

10          MR. CURRIER:  Thank you, sir.

11          THE COURT:  Objection overruled.  It will

12    come in as Exhibit 3.

13          (Exhibit No. 3 was admitted.)

14    BY MR. DALE:

15    Q    Is this altar in substantially -- is a similar

16    altar still there?

17    A    Yes.

18    Q    Let me ask you, sir, if you could look on the

19    statue of Santa Muerte.  Is there a photograph on

20    there?

21    A    Yes, there is.

22    Q    Okay.  And did you see this same altar

23    yesterday?

24    A    Yes.

25    Q    Okay.  How did you see it?

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    A    We were executing the arrest warrant of

2    Ms. Blair.

3    Q    And why would you then see -- well, where was it

4    located?

5    A    It was located in the first door to the left as

6    you enter the business.

7    Q    Okay.  And so how did you have a reason to go

8    into that room?

9    A    We do -- as we were executing the arrest

10   warrant, just to do a security sweep for officer

11   safety, we make sure there was nobody else in the

12   business while we're executing the arrest warrant.

13   Q    And, sir, I show you what has been marked as

14   Government Exhibit 4.  Is this a picture that was

15   taken yesterday at yesterday's search?

16   A    Yes.

17            MR. DALE:  Okay.  I move to admit Exhibit 4

18   into evidence.

19            THE COURT:  Any legal objection?

20            MR. CURRIER:  None, Your Honor.

21            THE COURT:  All right.  It will come in as

22   Exhibit 4.

23            (Exhibit No. 4 was admitted.)

24   BY MR. DALE:

25   Q    Did you snap a picture yourself yesterday?

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    A    I did.

2    Q    Let me show you Exhibit 5.  Is that the picture

3    you took?

4    A    It is.

5    Q    And what do we see in this picture?

6    A    You see the statue of Santa Muerte with Diana

7    Ortiz-Zarate's picture on it.

8    Q    And you know that to be her photograph?

9    A    Yes.

10   Q    Why did you take this picture?

11   A    I took this picture because Santa Muerte stands

12   for the Saint of Death, and seeing one of my

13   witnesses' photos on the statue alarmed me.

14   Q    Why did it alarm you if you could be more

15   specific with the Court?

16   A    To me it was a symbol of intimidation or a

17   symbol that Ms. Blair wanted harm to come to

18   Ms. Ortiz.

19   Q    Now, you don't know that.  You're just --

20   A    That's just my opinion.

21   Q    Okay.  And now you're an IRS agent, a Special

22   Agent, but what kinds of investigations have you been

23   involved in?

24   A    Most of my career -- I've been an agent for

25   almost 24 years -- the majority of my career I've

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    worked narcotics and money laundering investigations.

2    Q    So is that the first time you've seen an altar

3    of Santa Muerte?

4    A    No.  I've seen several altars of Santa Muerte.

5    Q    Okay.  And what do you often see them in

6    conjunction with?

7    A    Typically when I see an altar like this, it

8    involves a narcotics investigation, typically large

9    scale in that I do know that Mexican cartels often

10   pray to Santa Muerte to assist them and to pray for

11   them, for example, that their drug loads reach their

12   destination or that their couriers don't get

13   arrested.  It's oftentimes prayed to by, you know,

14   the criminal enterprises of Mexico.

15   Q    Okay.

16            MR. CURRIER:  Objection, relevance now,

17   Your Honor.  Yesterday in the hearings it was said I

18   believe by the government that this was not a drug

19   case.  Therefore, all of this testimony I would move

20   be stricken.

21            THE COURT:  All right.  How is it relevant

22   that drug dealers he's known in the past pray to it

23   for success in drug dealing?

24            MR. DALE:  I think the connection here is

25   really his basis for taking a picture of this image

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    and his alarm that he saw his witness with her

2    picture displayed on an altar that does bear this

3    association.  And that's the reason why I'm entering

4    this into evidence -- or I think the picture is

5    already into evidence.

6              THE COURT:  It's not the picture that's an

7    issue; the picture is in evidence.  The question is

8    his testimony going forward regarding what he's seen

9    in the past involving drug dealers.  What's that have

10   to do with this case?

11             MR. DALE:  It's the connection to the

12   criminal underworld, to a type of practice that is

13   associated with criminality with criminal actions,

14   and the impact of intimidation that this can have on

15   a person that is aware of that.

16             THE COURT:  Is it your position that people

17   who have Santa Muerte statues are criminals?

18             MR. DALE:  No, absolutely not, and we would

19   never offer that into evidence.

20             THE COURT:  Is it your position that all

21   criminals have Santa Muerte statues?

22             MR. DALE:  We're not saying that either.

23             THE COURT:  What are you saying?

24             MR. DALE:  We are saying that if you have

25   an individual who is from Mexico, living here

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1     illegally, she can be manipulated and intimidated by

2     putting --

3               THE COURT:  -- by putting her picture here?

4               MR. DALE:  Yes.  Yes.

5               THE COURT:  You might want to get to that.

6               MR. DALE:  I plan to, Your Honor.

7               THE COURT:  Okay.  I mean on illegal

8     aliens we don't really need much of a detention

9     hearing.

10              MR. DALE:  Not Ms. Blair -- not Ms. Blair,

11    but Ms. Ortiz is in the country illegally.

12              THE COURT:  It's not Ms. Ortiz's statue, is

13    it?

14              MR. DALE:  It's her photograph.

15              THE COURT:  I thought it was Ms. Blair's

16    statue.

17              MR. DALE:  Well, if it were Ms. Ortiz's

18    statue, we wouldn't be here.  We wouldn't be worried

19    about that.  The relevance of this is that it is

20    Ms. Ortiz's photograph that is on Ms. Blair's statue.

21              THE COURT:  It's not the photograph that is

22    in issue.

23              MR. DALE:  Yes, sir.

24              THE COURT:  That's been admitted.

25              MR. DALE:  Okay.

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          THE COURT:  It's you asking him to testify

2     about things he's seen in the past involving drug

3     dealers.

4          MR. DALE:  Your Honor, I didn't ask -- I

5     didn't ask specifically for that.  I just want --

6          THE COURT:  Mr. Dale, I'm going to sustain

7     the objection.

8          MR. DALE:  Okay.

9          THE COURT:  Start over.

10         MR. DALE:  Sir, at what point?

11         THE COURT:  At any point you want.

12         MR. DALE:  Okay.  Very well.

13         THE COURT:  I don't see any tie-in, and you

14    don't seem to be getting my questions to you.  My

15    questions have to do with why is it relevant what

16    he's ever seen with drug dealers, and you keep going

17    back to the statue.

18         MR. DALE:  Well, Your Honor, I thought I

19    answered that.  And the question was why would this

20    relate to that.  And it's just that it is a matter of

21    something that's connected to intimidation -- fear

22    and intimidation.  That is the point here.

23         THE COURT:  All right.  I sustain the

24    objection.

25         MR. DALE:  Okay.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    BY MR. DALE:

2    Q    Special Agent Grove, how would this be a

3    practice that could intimidate a witness?  Why did it

4    concern you?

5    A    Because after debriefing Ms. Ortiz, she made it

6    very clear that Ms. Ortiz believes in praying to

7    Santa Muerte and believes very deeply that Ms. Blair

8    is involved in witchcraft, and knowing that her

9    picture is on the statue is intimidating to her.

10   Q    So it really is nothing at all to do with your

11   experience in narcotics investigations; it's simple

12   fact.  Is that right?

13   A    It was the simple fact that the Saint of Death

14   has a picture of my witness on it.

15   Q    Okay.  And did Ms. Ortiz tell you how that she

16   knew of these practices and how they created fear and

17   intimidation in her?

18   A    She witnessed Ms. Blair practicing witchcraft.

19   Q    Okay.  Or doing practices that were consistent

20   with --

21             MS. BLAIR:  (Inaudible.)

22             THE COURT:  Just one second.

23             Mr. Currier, with all due respect, your

24   client is either going to have to withhold commentary

25   by utterances, or she'll just have to listen from

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   some distant point.

2           MR. CURRIER:  Yes, sir.

3           THE COURT:  If she can conduct herself

4   appropriately, we'll continue.

5           Do you understand that, Ms. Blair?

6           MS. BLAIR:  Yes, sir.

7           THE COURT:  If you don't like what he says,

8   that's fine, but I don't want a continuing

9   commentary.

10          MS. BLAIR:  I'm sorry.

11          THE COURT:  Okay.  Go ahead.

12  BY MR. DALE:

13  Q    Did Ms. Ortiz state that she had gone to the

14  graveyard with Ms. Blair before?

15  A    Yes.

16  Q    For what purpose?

17  A    To dig up dirt.

18  Q    For what purpose?

19  A    So that she could spread the dirt on -- as part

20  of her witchcraft or curse that she was about to

21  perform, she needed graveyard dirt.  So they went to

22  a graveyard and dug up some dirt.

23  Q    Okay.  Did she talk about putting oil and water

24  and dirt into places to destroy their businesses?

25          MR. CURRIER:  Objection, leading.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1      MR. DALE:  Leading is permissible in a

2  detention hearing, Your Honor.

3      THE COURT:  Well, technically it is, and

4  none of the rules apply so I get to apply them myself

5  whatever I want to.  And, you know, my rule; I'll let

6  you some leniency, but just let the witness testify.

7  It's not going to avail you a lot if I just have you

8  testifying what he's told you what somebody else told

9  him.  Even if it's, quote, admissible and I give it

10  no weight, what good is that?

11      MR. DALE:  Absolutely.

12      THE COURT:  So let's let him testify

13  instead of you.

14      MR. DALE:  Very well.

15  BY MR. DALE:

16  Q    Well, describe some of the practices that she

17  said she had engaged in.

18  A    Well, in addition to escorting Ms. Blair to the

19  graveyard to get the dirt Ms. Blair would also spread

20  oil, water, and this graveyard dirt in front of

21  businesses to curse the business.

22      And Ms. Ortiz stated that on occasion those

23  businesses would be out of business within a matter

24  of days or weeks, and to Ms. Ortiz that was a symbol

25  that the curse actually worked.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    Okay.  So she'd seen her do this then?

2    A    Yes.  She also went with her on a time when she

3    actually watched Ms. Blair do this.

4    Q    Has Ms. Blair attempted to contact Ms. Ortiz's

5    minor daughter?

6    A    Yes.

7    Q    How do you know?

8    A    Diana told me -- Ms. Ortiz told me.

9    Q    Okay.  Had she had contact with her prior to her

10   getting into this case?

11   A    Not that I'm aware of.

12   Q    Okay.  Did she express concern over that

13   contact --

14   A    Yes --

15   Q    -- attempted contact?

16   A    -- absolutely.

17   Q    Did Ms. Ortiz try to contact -- or did Ms. Blair

18   try to contact Ms. Ortiz's former boyfriend?

19   A    Yes.

20   Q    And was there any results of these attempted

21   contacts?

22   A    Yes.  They -- she was attempting to contact them

23   on such a regular basis that they ended up changing

24   their phone numbers so that Ms. Blair could not try

25   to reach out to them anymore.

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          THE COURT:  Should I know when this

2    occurred, Mr. Dale?

3          MR. DALE:  Yes, Your Honor.  I'm sorry.

4    BY MR. DALE:

5    Q    Did these attempted contacts occur after

6    Ms. Ortiz was arrested in conjunction with the

7    Indictment we looked at that is Exhibit 1?

8    A    Yes, it was within the last couple of months.

9    Q    Okay.  While Ms. Ortiz was in custody?

10   A    Correct.

11   Q    Just to identify this -- and I'm going to bring

12   this up with my next witness -- but I have an

13   envelope here with jail letters.  Have you seen this

14   before?

15   A    Yes.

16   Q    Okay.  Were these provided by Blount County

17   Jail?

18   A    Those were provided by Ms. Ortiz's attorney.

19          MR. DALE:  Okay.  Thank you.

20          Okay.  I just wanted to establish this for

21   the witness, and we'll be talking about those.  And I

22   have no further questions for this witness at this

23   time.

24          THE COURT:  All right.  You may

25   cross-examine, Mr. Currier.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. CURRIER:  Thank you, Your Honor.

2                    CROSS-EXAMINATION

3     BY MR. CURRIER:

4     Q    Sir, first of all, I'm Charles Currier, and I

5     have the honor of representing Mrs. Blair.

6          Did you have an occasion to -- do you know how

7     many employees Ms. Blair had?

8     A    Forever, or recently?  At what time?

9     Q    In the time of the last year or so since the

10    bringing of this case.

11    A    I only know of two employees and herself.

12    Q    Okay.  And who are those employees?

13    A    Diana, Ana, and herself.

14    Q    Okay.  So you are not aware for instance of an

15    employee, at least casual, part-time, named Schultz

16    (phonetic)?

17    A    I have no idea who that person is.

18    Q    Okay.  Fair enough.  And do you know the woman

19    you call Ana?

20    A    I do not know her personally.

21    Q    Have you ever met her?

22    A    No.

23    Q    Have you ever chatted with her?

24    A    No.

25    Q    Have you ever tried to?

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    A     Not me personally, no.

2    Q     Have officers or agents of your agency as a part

3    of this investigation attempted to do so?

4    A     Not that I can recall.

5    Q     Are you familiar with the general plan of

6    investigation and actions of your agency with regard

7    to this case?

8    A     Yes.

9    Q     Would you be the person to know whether or not

10   someone was intending to interview -- to give her

11   full name, Anabel Orduna?

12             MR. DALE:  Your Honor, I would object.

13   This is outside the scope of the direct examination,

14   and it appears irrelevant.

15             THE COURT:  Overruled.

16             MR. CURRIER:  Thank you, Your Honor.

17             THE COURT:  But if you keep getting those,

18   we're going to have to move on.

19             MR. CURRIER:  Yes, sir.

20   BY MR. CURRIER:

21   Q     Have you ever seen a picture of her?

22   A     I'm sure I have.

23   Q     Do you see her in this courtroom?

24   A     I couldn't pick her out.

25   Q     Fair enough.  Okay.  Are you aware that

Electronically signed by Lynda Clark (601-377-188-1426)                           229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   Ms. Zarate wrote a letter or actually a postcard from

2   the jail to Ms. Anabel Orduna?

3   A    Yes.

4   Q    Have you seen that or seen a copy of it?

5   A    Yes.

6   Q    Okay.  Did you see it perhaps before it went out

7   of the jail?

8   A    No.

9   Q    When did you get a copy?

10  A    Just before court.

11  Q    Oh, okay.  When I tendered one to the

12  government.  Okay.

13       You use the word mortified --

14  A    Yes.

15  Q    -- and you are a professional man.  I suspect

16  you've been through at least college.

17  A    Thank you, yes.

18  Q    Probably graduate school.  Maybe you're a CPA.

19  I don't know.  What is your background?

20  A    I have a Bachelor's Degree in Criminal Justice

21  and Accounting.

22  Q    Okay.  Fair enough.  Where did you get that,

23  sir?

24  A    The University of Maryland.

25  Q    Now, you use the word mortified.  Would you not

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   agree that the word mortified also includes within it

2   the meaning embarrassed?

3   A    That is not the way I used it.

4   Q    Okay.  You have made reference to the various

5   exhibits which have been entered that show a

6   photograph of what you assert to be a statue of --

7   how did you say that again?

8   A    Santa Muerte.

9   Q    -- Santa Muerte.

10       Did you ask your defendant, Ms. Ortiz-Zarate,

11  who put that picture and that statue in the place

12  where she was?

13  A    No.

14  Q    Do you have any idea who put it there?

15  A    No.

16  Q    Was it there when you arrested her?

17  A    Who?  When I arrested who?

18  Q    Were you involved with the arrest of Ms. Diana

19  Ortiz-Zarate?

20  A    Not directly.

21  Q    Okay.  Did you go to the crime scene shortly or

22  immediately after she was arrested?

23  A    No.

24  Q    Are any of the officers who did go there here in

25  this courtroom?  You probably know.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   A    No.  Actually I don't remember who did the

2   arrest of Ms. Ortiz.

3   Q    Do you have a copy of the report?  I assume your

4   organization does reports if people are arrested.

5   A    I do not have a copy of that.

6   Q    Is there such a report?

7   A    I have no idea.  I didn't write --

8   Q    Fair enough.  Do you have pictures of the

9   alleged crime scene in which Ms. Ortiz was arrested?

10  A    Do I right here?

11  Q    Yes, or do you anywhere.

12  A    No, I don't have them right here, and I don't

13  know if there are pictures of the crime scene where

14  Ms. Ortiz was arrested.

15  Q    Would you be startled by an assertion that it

16  was Ms. Ortiz herself who put up that statue and

17  adorned it with that photograph?

18  A    I have no idea who put that photograph there.

19  Q    Okay.  Would you be startled to hear this statue

20  was put there by Ms. Ortiz?

21  A    I just don't know who put it there.

22  Q    Fine.  Let's go back.  In your opinion you cite

23  lots of experience.  Is it a good thing to have a

24  picture of yourself next to one of these statues?

25  A    Again, I don't practice this religion.  As I

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    testified earlier --

2    Q    Would you agree that the implication --

3         I'm sorry.  Please, continue.  I didn't mean to

4    cut you off.

5    A    As I said before, I know that statue to be the

6    Saint of Death.  Having my witness on it certainly

7    made me uncomfortable.

8    Q    Okay.  Now, on this supposed Saint of Death will

9    you agree that your usage and your interpretation is

10   that it was a hostile act by somebody?

11   A    I think I said that.  Having your picture on the

12   Saint of Death to me is not a good thing.

13   Q    Okay.  So if evidence were to be adduced, as you

14   were not there, that that was in fact there at the

15   time of her arrest and that it was she herself who

16   put it there, would that be relevant to this

17   discussion as to whether or not this woman is here to

18   terrorize Ms. Ortiz, and society and Ms. Ortiz, who

19   is locked up, need to be protected from her?

20   A    You're asking me to make an opinion on who put

21   it there and what it would mean?

22   Q    No.  I'm asserting to you that I propose to use

23   evidence that Ms. Ortiz herself put it there.

24   A    Well, I don't have an opinion on a scenario that

25   I don't know to be true.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    Fair enough.  We'll go on.

2         Now, have you in the course of your

3    investigations in this case ever met with the

4    defendant, Ms. Blair?

5    A    Only during her arrest.

6    Q    Okay.  Now, when you went there during her

7    arrest, you took a picture of the -- you presented as

8    your evidence the photograph of the, as you put it,

9    Angel of Death with a picture of Ms. Ortiz.  Is that

10   correct?

11            MR. DALE:  Objection.  That

12   mischaracterizes the agent's testimony.

13            THE COURT:  Rephrase your question.

14            MR. CURRIER:  Very good, sir.

15   BY MR. CURRIER:

16   Q    Did you take the photograph --

17        I think Exhibit 4 -- 5 my colleague tells me.

18   Thank you.

19        -- 5 which shows the arresting and the thing you

20   describe as an altar with a statue you have

21   described?

22   A    I took that picture, yes.

23   Q    You took that picture?

24   A    Yes.

25   Q    Fine.  You took that picture for a purpose.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    You're an investigator?

2    A    Yes.

3    Q    That purpose was to incriminate this woman,

4    Mrs. Blair, to show that she was -- that something

5    was going on.  You took a picture --

6         You're an experienced, multi-year, educated

7    officer of the U.S. Government?

8    A    Yes.

9    Q    -- to incriminate her?

10   A    No.  I was answering you that I am an

11   experienced, multi-year agent, yes.

12   Q    And your purpose in taking the picture?

13   A    Because I saw a picture of my witness on a

14   statue of what I know to be the Saint of Death.

15   Q    Okay.  All right.  Now, did you participate in

16   the questioning of Mrs. Ortiz?

17   A    Yes.

18   Q    Okay.  Were you the principal person who

19   questioned her, or were there many?

20   A    There were many.  I wouldn't say I was the

21   principal by any stretch.

22   Q    Did you talk about the substantive allegations

23   of these charges, not just the presence here?

24   A    You mean talking about the overall conspiracy?

25   Q    Yes, what you allege.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   A   Yes.

2   Q   Okay.  Did you do any cross-checking to see if

3   the allegations that you heard from Ms. Ortiz were in

4   fact real and true?

5   A   Of course.

6   Q   Okay.  Some of those tax returns, as I remember,

7   had a rubber stamp or a signature of a man who is I

8   think posing himself out as --

9              (Mr. Currier and the defendant held a

10                 discussion off the record.)

11  BY MR. CURRIER:

12  Q   A Johnston -- a Mr. William Johnston?

13  A   Yes.

14  Q   Did you ask her about his role in this?

15  A   Yes.

16  Q   As hearsay is admissible, what was his role?

17  A   He was the tax return preparer that Ms. Blair's

18  agency would use to prepare -- he was an actual

19  return preparer, so they would use his name on the

20  returns that they prepared.

21  Q   He was an actual preparer in the sense that he

22  prepared tax returns and had a PTIN?

23  A   Correct.

24  Q   And if people had asserted he was an accountant,

25  did your investigation reveal if that was accurate or

Electronically signed by Lynda Clark (601-377-188-1426)                229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  not?

2  A    I don't know what -- he is a return preparer.  I

3  don't know whether she's a CPA or accountant.

4  Q    Very well.  We'll go forward.

5      Now, are you aware that the defendant has strong

6  ties here in Knoxville and East Tennessee?

7  A    I have no idea.

8  Q    You have no idea?

9  A    No.

10  Q    How many --

11  A    I don't know Ms. Blair personally.

12  Q    I understand, but your agency has conducted an

13  investigation, and you have been one of the leading

14  agents in it.

15      How many people are in her family?

16  A    I have no idea.

17  Q    Have you any specific document or other piece of

18  evidence that shows that this woman has threatened,

19  urged harm, or done or suggested evil things might

20  happen, or anything else that would likely be deemed

21  witness tampering against Mrs. Blair (as stated)?

22  A    I don't have anything in writing.

23          THE COURT:  "Against Mrs. Blair?"

24          MR. CURRIER:  Mrs. Blair, this lady.

25  BY MR. CURRIER:

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    Did --

2              THE COURT:  It sounded like --

3    BY MR. CURRIER:

4    Q    Okay.  I'm sorry.  Against --

5         I apologize.  I misspoke.  Excuse me, Special

6    Agent.

7         -- against Mrs. Ortiz by Mrs. Blair?

8    A    I do not have any documents.

9    Q    Okay.  Do you have anything, recordings, hearsay

10   testimony, that you'd like to introduce?

11   A    I've already introduced my testimony.

12   Q    So nothing.  Okay.  Do you have any reason to

13   believe that she would flee this jurisdiction?

14   A    Yes.

15   Q    Okay.  What is that reason?

16   A    She wrote a letter to Diana in jail, which I

17   think is actually introduced, or it's going to be --

18   this is going to be addressed by the next witness,

19   but there is a letter she wrote to Diana that stated

20   that if Diana was to bond out, that she and Ms. Blair

21   would immediately go to Mexico.

22   Q    We haven't seen this so --

23   A    You asked.

24   Q    I did ask, and I'm glad to find out.

25        Now, of what country, if you know, is Ms. Blair

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    a citizen?

2    A    I don't know.

3    Q    Would it surprise you if I said she's a citizen

4    of the United States?

5    A    No.

6    Q    All right.

7           MR. CURRIER:  One moment please, Your

8    Honor.

9           THE COURT:  Mr. Currier, take your time.

10          (A discussion was held off the record

11          between Mr. Currier, Ms. Blair, and

12          the interpreter.)

13   BY MR. CURRIER:

14   Q    You have said this is not yet part of the

15   record, sir.  I assume that shortly we will be seeing

16   the actual letter to which you were referring?

17   A    You will.

18          MR. CURRIER:  Okay.  Then subject to that,

19   Your Honor, I have no further questions at this time.

20          THE COURT:  All right.  Any redirect,

21   Mr. Dale?

22          MR. DALE:  Very briefly.

23                  REDIRECT EXAMINATION

24   BY MR. DALE:

25   Q    Special Agent Grove, how do you know that it was

Electronically signed by Lynda Clark (601-377-188-1426)                                229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   Ms. Ortiz's picture on that Santa Muerte figure?

2   A    Well, I've seen her several times, and she said

3   it was her picture.

4   Q    When did she say it?

5   A    Last night.

6   Q    So she was seeing it before she got locked up?

7   A    Correct.

8   Q    Did she say that she put that picture on the

9   figure?

10   A    No.

11   Q    Where was Diana Ortiz arrested?

12   A    I believe it was at the shop at Alcoa Highway.

13   Q    Okay.  And where was the location where the

14   Santa Muerte altar is located?

15   A    That was at the Kingston Pike location.

16   Q    Different locations?

17   A    Downtown West.  Excuse me.  Yes.

18   Q    And there was some testimony about

19   Mr. Johnston's name being on returns?

20   A    Correct.

21   Q    Do you recall that?

22   A    Yes.

23   Q    And did Ms. Blair put Mr. Johnston's name on

24   returns without his permission?

25   A    Yes.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    How do you know that?

2    A    He told me, and he signed -- and she would sign

3    his name.

4              MR. DALE:  Nothing further at this time.

5              THE COURT:  Mr. Currier, real quickly on

6    any of those issues?

7              MR. CURRIER:  Yes, sir.

8                    RECROSS-EXAMINATION

9    BY MR. CURRIER:

10   Q    You showed Ms. Ortiz the photograph you later

11   entered into evidence?

12   A    No.

13   Q    Oh, so how did she know about the statue with

14   her picture on it?

15   A    She had seen it before she got arrested.

16   Q    Awe, she'd seen it in that office.  But you also

17   made the point, did you not, sir, that that identical

18   or similar alleged altar was in the office where she

19   was arrested, correct?

20   A    No.  Where Ms. Blair was arrested.

21   Q    No.  Where Ms. Ortiz was arrested on Alcoa

22   Highway?

23   A    No.  Both of those shrines that have been

24   admitted are both at the Kingston -- Downtown West

25   location.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. CURRIER:  Okay.  Thank you.

2          THE COURT:  Anything else, Mr. Dale?

3                    REDIRECT EXAMINATION

4   BY MR. DALE:

5   Q    Just to clarify your last answer, there was one

6   shrine and several photos that were put into

7   evidence, right?

8   A    Yes.

9   Q    And that shrine --

10  A    The shrine -- it is the same shrine.  There was

11  different offerings on the shrine, but all the

12  pictures are of the room as you entered to the left

13  of the Downtown West location.

14          MR. DALE:  Okay.  Nothing further.  Thank

15  you.

16          THE COURT:  I don't want to belabor it; I'm

17  a little confused.

18          THE WITNESS:  I'm sorry.

19          THE COURT:  If she didn't see the

20  picture --

21          THE WITNESS:  She did not see the picture

22  that I took yesterday.

23          THE COURT:  -- how was she able to say,

24  "That's my picture?"

25          THE WITNESS:  She saw it prior to being

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    arrested, so she didn't see my picture --

2           THE COURT:  What did she say?

3           THE WITNESS:  She knew that her picture was

4    on the shrine prior to being arrested.  So when we

5    spoke to her last night, she said that she knew that

6    her -- that she had seen her picture on that shrine

7    prior to being arrested.

8           MR. DALE:  Your Honor, if I may, just to

9    clear this up.

10          THE COURT:  All right.

11          MR. DALE:  Your Honor, the photograph

12    that's marked as Exhibit 3 is the one that was taken

13    at the execution of the search warrant in December.

14          THE COURT:  Right.

15          MR. DALE:  That was the day when Ms. Ortiz

16    was taken into custody.  And then Exhibit 5 that

17    Mr. Grove is talking about is the picture taken

18    yesterday.  So it is the same altar and the same

19    picture.

20          THE COURT:  I totally understand that.

21          MR. DALE:  Okay.

22          THE COURT:  What I don't understand is how

23    Ms. Ortiz said, "That's my picture" and she wasn't

24    shown anything.  You just showed me Exhibit 5, and

25    you're proffering that's Ms. Ortiz's picture.

Electronically signed by Lynda Clark (601-377-188-1426)       229d09fc-df83-4b83-8c7b-0f2432adc2c0

1        MR. DALE:  Yes.

2        THE COURT:  He was asked, "Did you show

3   that to Ms. Ortiz?  No, I did not."  But he also said

4   to you, "Ms. Ortiz says that's her picture."  How can

5   she say, "That's my picture," if she hasn't seen it?

6        MR. DALE:  Okay.  Because she had seen the

7   altar, which is photographed in Exhibit 3.  She'd

8   been there.  She'd seen it.  She knew about it.  She

9   knew, "Yeah, that's my picture," a photograph taken

10  on the day that Ms. Ortiz was arrested.  And the same

11  photo was there yesterday.  And so that's the reason.

12        THE COURT:  Okay.  So she's not saying that

13  she saw the photograph to confirm the photograph in

14  Exhibit 5 is her picture; she's confirming that some

15  picture of her was up months ago.

16  BY MR. DALE:

17  Q    Special Agent Grove, is that her picture?

18  A    Yes.

19        MR. DALE:  Okay.

20        THE COURT:  Okay.  That's all.  You can

21  step down.

22        Call your next witness.

23        MR. DALE:  The United States calls David

24  Vicente-Pena.

25        THE COURTROOM DEPUTY:  Raise your right

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    hand.

2          Do you solemnly swear or affirm your

3    testimony will be the truth, the whole truth and

4    nothing but the truth, so help you God?

5          THE WITNESS:  I do.

6          THE COURTROOM DEPUTY:  If you will have a

7    seat, and if you will state and spell your name for

8    the record.

9          THE WITNESS:  My name is David Vincente,

10   D-a-v-i-d, V-i-c-e-n-t-e.

11         THE COURTROOM DEPUTY:  Thank you.

12                     DAVID VICENTE,

13           having been first duly sworn, was

14           examined and testified as follows:

15                 DIRECT EXAMINATION.

16   BY MR. DALE:

17   Q    Good afternoon, Mr. Vincente.  Could you please

18   tell the Court where you work.

19   A    I am a Deportation Officer for Immigration and

20   Customs Enforcement in Knoxville, Tennessee, sir.

21   Q    And how do you have familiarity with this case?

22   A    At the beginning of this case I was notified

23   through our colleagues at HSI for my help since we

24   knew that we were possibly going to be encountering

25   foreign born people from other countries.  So they

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   called me in to see if I could help with my Spanish

2   speaking ability, sir.

3   Q    And let's talk about that.  Are you fluent in

4   both English and Spanish?

5   A    Yes, sir.

6   Q    How did you develop fluency in Spanish?

7   A    I am from Puerto Rico.  I was born in Jersey

8   City from a Puerto Rican family.  There our custom is

9   to speak Spanish at the house, learn English outside.

10  I moved to Puerto Rico and obviously polished my

11  Spanish while I was there, sir.

12  Q    And have you developed familiarity with cultural

13  practices in Mexico?

14  A    Through my job, sir, here as a Deportation

15  Officer I have the ability to -- I'm able to learn

16  some customs from different countries, to include

17  South America, sir.

18  Q    And through your involvement in this

19  investigation do you know whether Ms. Blair has

20  contacts in Mexico?

21  A    Yes, sir.

22  Q    Does she?

23  A    Yes.

24  Q    In fact, her husband is from Mexico, isn't he?

25  A    Based on our investigation that I did on

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   Ms. Mayra's husband, as of right now he has an I-130

2   pending, which is a petition for an alien relative.

3   Q   Okay.  And based upon defense counsel's

4   representation yesterday, he's in this country

5   presently illegally.  Is that right?

6   A   Based on our law, sir, even though he has a

7   petition pending, it does not give Ms. Mayra's

8   husband any legal right to be here in the United

9   States legally, sir.

10  Q   Okay.  If Ms. Blair wanted --

11      Now, Ms. Blair is a naturalized U.S. citizen,

12  isn't she?

13  A   Yes, sir.

14  Q   Okay.  Do you know where she was born?

15  A   In Mexico, sir.

16  Q   Okay.  Do you know where in Mexico?

17  A   I don't know, sir.

18  Q   Okay.  If she wanted to flee this country to

19  Mexico, how difficult would it be to get into Mexico?

20  A   Well, based on my experience as -- not as a

21  border patrol agent but in conversation and people

22  that I know throughout this job in conversation that

23  I have had, Ms. Mayra -- it will be fairly easy for

24  her to go to Mexico as a U.S. citizen as her rightful

25  way, sir.

Electronically signed by Lynda Clark (601-377-188-1426)                                        229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   Q    Would she need a passport to get into Mexico?

2   A    No, sir.

3   Q    Assuming she wanted to get a false

4   identification, could she do that?

5   A    I do not know the answer to that.

6          MR. CURRIER:  Objection, Your Honor.

7          MR. DALE:  I'll rephrase it, Your Honor.

8          THE COURT:  I'll overrule the objection.

9          THE WITNESS:  Yes, sir.

10  BY MR. DALE:

11  Q    In your experience in your job have you seen

12  false identification documents obtained by illegal

13  immigrants?

14  A    That is correct, sir.

15  Q    And could you tell the Court how easy or how

16  difficult it is to get such a document?

17  A    Based on my experience, I have had the

18  opportunity to work with other federal entities

19  involving that type of crime, sir, and based on my

20  experience, I will tell you that it would be fairly

21  easy to obtain some type of false identification in

22  this area, sir.

23  Q    Like a Mexican Consulate card, could that be

24  obtained?

25  A    Yes, sir.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    How much would it cost?

2    A    Well, we have -- as part of our investigation

3    when we encounter a subject in our office, based on

4    what they have as property, part of the investigation

5    is what we call intel, and I have heard rates from

6    $50 to a 500-dollar package, sir.

7    Q    Okay.  And this present case involves falsified

8    documents, doesn't it?

9    A    Yes, sir.

10    Q    Okay.  Now, Ms. Ortiz does not speak very much

11    English, does she?

12    A    Well, when I was -- as far as I've been in her

13    presence, she has been able somewhat to communicate

14    with other agents, sir.

15    Q    Did you have a conversation with her yesterday

16    evening?

17    A    Yes, I did, sir.

18    Q    Okay.  In English or in Spanish?

19    A    With Ms. Mayra?

20    Q    No, with Ms. Ortiz.

21    A    Ms. Ortiz.  I'm so sorry.  I apologize to the

22    Court.

23         I was able to have a lengthy Spanish

24    conversation with Ms. Ortiz.

25    Q    Okay.  Did she confirm to you that there had

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    been unwanted text messages from Ms. Blair to

2    Ms. Ortiz's minor daughter?

3    A    That is correct, sir.

4    Q    Did Ms. Blair ever write to Ms. Ortiz at the

5    Blount County Jail?

6    A    Yes, sir.

7    Q    Did Ms. Ortiz ever write back to her?

8    A    As we were shown today, once, sir.

9    Q    To Ms. Blair -- Ortiz to Ms. Blair?

10   A    Ortiz to Ms. Blair, sir, was the letter shown to

11   us.

12   Q    Was that a letter to somebody named Ana?

13   A    Based on my recollection, yes, sir.  I'm sorry

14   for --

15   Q    Okay.

16   A    -- confusing both names.

17   Q    Did Ms. Ortiz put Ms. Blair on her visitor list?

18   A    Based on the letter, she said she was not able

19   to, sir.

20   Q    Okay.

21   A    It is stated on the letter in writing.

22   Q    We'll come back to the letters in just a moment,

23   but do you know if Ms. Blair ever asked anyone to

24   translate documents for her?

25   A    Yes, sir.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  Q    Okay.  And were you provided copies of those

2  e-mails to look at today?

3  A    Yes, sir.  Today I did, sir.

4  Q    I'm going to show you at the same time

5  documents, Exhibit 6 and Exhibit 7, and ask if you

6  can identify those documents.

7  A    Yes, sir.  I have to see them on my screen.

8  Q    Okay.

9         MR. CURRIER:  Could we see them

10  individually, sir.  They're overlapped, at least on

11  my screen.

12         MR. DALE:  Oh, absolutely.

13  BY MR. DALE:

14  Q    That's Exhibit 6.  And Exhibit 7.  (Showing.)

15  A    Thank you, sir.

16  Q    Both dated February the 15th, 2013?

17  A    Yes, sir.

18  Q    Part of the same e-mail exchange.  Is that

19  right?

20  A    That is correct, sir.

21  Q    And do they deal with the translation of

22  documents?

23  A    Yes, sir, based on the conversation in these

24  e-mails, sir.

25         MR. CURRIER:  Could we either see a hard

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   copy or borrow the screen for a minute so my

2   interpreter can --

3           MR. DALE:  Certainly.  And I'm going to

4   help with that in just a sec here.

5           I'd like to move to admit Exhibit 7 into

6   evidence.

7           MR. CURRIER:  May I at least look at it

8   intelligently with someone who can help me with the

9   Spanish?

10          MR. DALE:  Let's do this then --

11          THE COURT:  I don't know what it is except

12  you said it's an e-mail and the date of it.  I don't

13  know who it's from, who it's to, what it's about.

14          MR. DALE:  Okay.  Well, let's establish

15  that first.

16          THE COURT:  That'd be good.

17          MR. DALE:  Because I thought I asked were

18  these e-mails and were they dealing with the

19  translation of documents, but let's make this clear.

20  BY MR. DALE:

21  Q    Was this, sir, a letter from -- an e-mail from

22  Mayra Moreno to Sandra Jacome?

23          THE COURT:  Wait a minute.  From who?

24          MR. DALE:  Mayra Moreno.

25          THE WITNESS:  Yes, sir.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    BY MR. DALE:

2    Q    Okay.  Is that a name that Mayra Blair has used?

3    A    Yes, sir.

4    Q    Okay.  To Sandra Jacome.

5    A    Sandra Jacome, yes, sir.

6    Q    Is that person a translator?

7    A    Yes, sir.

8    Q    Okay.  And could you please read what the

9    statement down here at the bottom from Sandra -- to

10   Mayra from Sandra says --

11   A    Yes, sir.

12   Q    -- please.

13   A    [Reading document out loud in Spanish.]

14        THE COURT:  Now, wait a minute.  The court

15   reporter is not going to be able to get that down.

16        MR. DALE:  I couldn't get that down either,

17   Your Honor, but I'm going to ask Mr. Vincente if he

18   could translate it after he reads it.

19        THE COURT:  Why are you having him read it?

20        MR. DALE:  So he can translate it -- so

21   it's clear what we're having him translate.

22        THE COURT:  Okay.  I thought it was in

23   front of him, but go ahead.

24        If you need to read it out loud in order to

25   translate it, go ahead.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   BY MR. DALE:

2   Q    Sir, could you just tell us what this line means

3   that I've underlined here, (pointing).

4   A    Yes, sir.

5   Q    I'm sorry.  Let me just clear this mess out.

6   This line here that begins with [reading document out

7   loud in Spanish].  What does that mean?

8   A    "This license is very obviously falsified.  Do

9   you want me to translate?"

10  Q    Okay.  And what is the response?

11  A    In English, sir?

12  Q    In English, please.

13  A    Yes, sir.  "I have no way to verify the

14  documents, if they are real or not, is what they

15  bring me.  Here we just take documents.  Yes,

16  translate, please."

17           MR. DALE:  And I'll move now to admit

18  Exhibit 7 into evidence.

19           THE COURT:  All right.

20           MR. CURRIER:  Your Honor, may I?  I'm

21  sorry.

22           THE COURT:  Go ahead.

23           MR. CURRIER:  May I note, first of all,

24  this doesn't appear to have anything to do with

25  danger or flight.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1        THE COURT:  A good argument later.

2        MR. CURRIER:  Yes, I accept that.  But this

3   document in Spanish does not seem to do anything

4   other than be an inquiry about whether a document --

5   what does the document say as interpreted by the

6   gentleman on the stand, going with his

7   interpretation.

8        THE COURT:  I agree.

9        I have no idea what this is about,

10  Mr. Dale.  You have Mayra Moreno writing to a

11  translator.  Somebody says, "This license is

12  falsified."  Somebody responds, "Yes, translate."

13       MR. DALE:  Okay.

14       THE COURT:  But I still have no idea what

15  they're talking about or what it has to do with this

16  case.

17       MR. DALE:  Well, let me back up then.

18  BY MR. DALE:

19  Q    We've already established, Mr. Vincente, that

20  Mayra Moreno is a name that is used by Mayra Blair.

21  Is that right?

22  A    Yes, sir.

23  Q    Okay.  And in the course of this investigation I

24  think you testified already that this case involves

25  the use of false documents.  Is that right?

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

A Yes, sir.
Q Okay. And based upon your knowledge of this case, would she have a translator translate documents?
A Yes, sir.
Q Okay. And on occasion would the translator say, "No, I can't translate this document, because it is obviously falsified?"
A In that e-mail right there she's asking her and telling her it's obviously falsified, yes.
Q And would Ms. Blair write back, "I have no way of knowing if the document is false or not. All we do here is accept them?"
A That is correct, sir.

MR. DALE: We move to admit Exhibit 7 into evidence.

MR. CURRIER: If we could perhaps go a little further into voir dire.

THE COURT: I'm going to let it in, and you'll have to try to tell me its import.

(Exhibit No. 7 was admitted.)

MR. DALE: Your Honor, one of the factors in this case is establishing that we have a solid case against the person we're seeking to be detained, and this does this.

Electronically signed by Lynda Clark (601-377-188-1426) 229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          It also goes to the ease by which she can

2    get false documents.  And that certainly is an issue

3    that applies to flight risk.  I understand --

4          THE COURT:  How do I know that from that?

5    She sent her it looks like a license that another

6    person said, "This is false."

7          MR. DALE:  Yes.

8          THE COURT:  How do I know she didn't spend

9    three years and $800,000 to get that document as

10   opposed to you saying, Oh, and prove she could get it

11   easily?  How do I know from this e-mail exchange?

12         MR. DALE:  From this e-mail exchange you

13   probably can't know that.

14         THE COURT:  Okay.  So that's not relevant.

15   All I know is she sent something to somebody.

16         MR. DALE:  Right.

17         THE COURT:  And that somebody said, This

18   license is falsified.  Do you want it translated?

19         MR. DALE:  Yes.

20         MR. CURRIER:  By the Court's own --

21         THE COURT:  So if I sent something to an

22   interpreter and ask them to translate it and they say

23   it's falsified, does that make me a bad person?

24         MR. DALE:  If your business involves the

25   use of false identifications and you sent a false

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    identification to a translator, and she tells you,

2    This thing is obviously false, and you say, I have no

3    way of knowing that, go ahead and translate it, then

4    yes.

5              THE COURT:  Is translating a false document

6    a crime?

7              MR. DALE:  It certainly is if you send it

8    in to establish an official document like an IRS

9    document.

10             MR. CURRIER:  Objection, Your Honor, on a

11   point of privilege.  My interpreter has just helped

12   me read this.  Exhibit 7 nowhere says, Go ahead and

13   translate this false document.

14             There is a statement in Spanish by whoever

15   this is -- and we will adduce evidence that Mayra

16   Moreno was not only the human being sitting here as

17   defendant but some of her staff -- but also this

18   doesn't say that.  It says, as Your Honor has ably

19   brought out, merely that she is asking for a

20   translation.

21             MR. DALE:  Well, it is directed to a

22   "Hola, Mayra."  And there's not been any testimony

23   that there's another Mayra that has worked there.

24             THE COURT:  I'm not arguing that.  What

25   does, "Yes, translate," mean?

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. DALE:  Your Honor, this is subject to

2    interpretation I think first and foremost by the

3    Court here.  If there's a document and it's very

4    obviously false, and I say, "I have no way of knowing

5    that.  Go ahead and translate it."  Then you can draw

6    what inference you want from that.

7          MR. CURRIER:  Okay.  But to draw that

8    inference that this is an inculpating document, Your

9    Honor, is going it one step too far.  And I think --

10          THE COURT:  I draw no inference from that.

11          MR. CURRIER:  Thank you very much, Your

12    Honor.

13          THE COURT:  I have asked people to

14    translate documents.  I don't know if they're false

15    or not.  You've asked him to translate a document.  I

16    don't know if it's false or not.

17          I don't know what translating a document

18    has to do with anything relevant to this case unless

19    she did something with that translation that was

20    illegal or if it was to prove she couldn't read it

21    herself and needed it translated or something that I

22    could think of.

23          But just to introduce in evidence that she

24    sent a document to somebody and said, Please,

25    translate it, and they said, Well, it's obviously

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   false.  And she said, Translate it anyway.  I want to

2   know what it says.  I don't get it.

3           MR. DALE:  Okay.

4           THE COURT:  Does that make her a flight

5   risk?

6           MR. DALE:  Well, it goes to the strength of

7   the case, and it goes to the knowledge of falsified

8   identification documents.

9   BY MR. DALE:

10  Q   Agent Vincente, do you know what was done with

11  the documents after they were translated?

12  A   I do not know, sir.

13  Q   Okay.  I may have to call another witness on

14  that issue.

15      Let's look at Exhibit 6 then.

16  A   Yes, sir.

17  Q   Could you please read to us what it says at the

18  bottom from Sandra Jacome to Mayra Moreno.

19  A   You want me to read the English version, right,

20  sir?

21  Q   Please, yes, sir.

22  A   "It is morally difficult for me to translate

23  documents which are confirmed to be falsified.  I

24  also put my job as a court interpreter at risk.  I

25  could translate them for you but I will have to --

Electronically signed by Lynda Clark (601-377-188-1426)       229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  but I know at the bottom stating that they are

2  nongovernment issue.  It is my job to verify the

3  veracity of documents before translating them."

4  Q   Okay.  And what is the response above, dated

5  February 15th, 2013?

6  A   Ms. Mayra Moreno's response?

7  Q   Yes.  If you could read the Spanish text but

8  read it in English, please.

9  A   Yes, sir.  "Of course I understand your point of

10  view.  And as for me, I also have any problems since

11  I don't have a way to verify the veracity of the

12  documents.  And I also would not like to get into any

13  trouble.  So as for me, no problem, girlfriend."

14          MR. DALE:  Okay.  Move to admit Exhibit 6

15  into evidence, please.

16          THE COURT:  All right.  Any objection?

17          MR. CURRIER:  None at the moment, Your

18  Honor.

19          THE COURT:  All right.

20          (Exhibit No. 6 was admitted.)

21  BY MR. DALE:

22  Q   Let me show you Exhibit 8.  It's the first page.

23  And there are some identification documents that are

24  attached to this, are there not?

25  A   Yes, sir.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    What kind of document is this, please?

2            MR. CURRIER:  Could we be specific for the

3    record.  I note on the screen something with the

4    letter A in white on a green background that says

5    [reading document out loud in Spanish] and has some

6    numbers.

7    BY MR. DALE:

8    Q    Is this a Mexican driver's license?

9    A    From what I'm seeing here on the screen and what

10   is the title of it, [reading document out loud in

11   Spanish], it's a license to drive.

12   Q    Okay.

13           THE COURT:  Is that one page of a

14   multi-page document?

15           MR. DALE:  Yes, it is, Your Honor.  All

16   this constitutes Exhibit 8.

17           THE COURT:  Okay.

18   BY MR. DALE:

19   Q    And does this last page have a note from the

20   translator regarding what appears to be false

21   information on the document?

22   A    As per the translator here on the note, sir,

23   yes.

24           MR. DALE:  Okay.  I'm going to move to

25   admit Exhibit 8 into evidence.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    MR. CURRIER:  Objection, Your Honor.  I

2  raise relevance, and I would like to have a chance to

3  examine it for a second at least with my own

4  interpreter.

5    THE COURT:  All right.  What relevance is

6  it, Mr. Dale?

7    MR. DALE:  It's the same as the others,

8  Your Honor.  It is an attempt to have documents

9  translated that are very obviously falsified --

10    THE COURT:  All I saw was a Mexican

11  driver's license and some question about whether the

12  last page identified what was false in the Mexican

13  driver's license.

14    I don't know who it was from, who it was

15  to, what it was about, when it was sent.  I don't

16  know one thing about it that has anything to do with

17  this case other than he identified a driver's license

18  and what's false about it.

19    MR. DALE:  Okay.

20    THE COURT:  Was that driver's license used

21  in this case?  In other words, I could come up with a

22  false Mexican driver's license, and why would I make

23  it an exhibit?

24    I mean if it was used in this case, if

25  Ms. Moreno used it, if somebody used it, if it was

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  used to falsify returns, I don't know.  Just

2  identifying a false Mexican driver's license, what

3  does that tell me about whether I should let her go

4  or not?

5  BY MR. DALE:

6  Q    Well, let me ask this, does this exhibit,

7  Exhibit 8, indicate a conversation and communication

8  between Mayra Blair and Sandra Jacome, the

9  interpreter, regarding the translation of documents

10  that are false?

11            MR. CURRIER:  Again objection --

12            THE COURT:  What's the objection?

13            MR. CURRIER:  Relevance.

14            THE COURT:  He just asked if it was --

15            MR. CURRIER:  Okay.  Yes, sir.

16            THE COURT:  -- if it was a conversation

17  between the two people about false documents.  How

18  could that not be relevant to a case that involves

19  false documents?

20            MR. CURRIER:  I will wait my turn, Your

21  Honor.

22            THE COURT:  Thank you.

23            THE WITNESS:  Based on what was provided

24  for me and that I understood reading between back and

25  forth, yes, that was the conversation, sir.

Electronically signed by Lynda Clark (601-377-188-1426)                      229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    BY MR. DALE:

2    Q    Okay.  And it had the documents attached to it

3    that were appended to this exhibit, right?

4    A    Yes, sir.

5    Q    Okay.

6            THE COURT:  So are these the documents in

7    Exhibit 8 that go with the e-mails in Exhibits 6 and

8    7?

9            MR. DALE:  This is a separate e-mail, Your

10   Honor, as you'll see from the date on it.

11           THE COURT:  Well, I haven't seen it, so

12   tell me, what is the date?

13           MR. DALE:  Well, the date that's on it is

14   February 17, 2013.

15           THE COURT:  Okay.

16           MR. DALE:  Okay.  And --

17           THE COURT:  I'm going to let it in.

18           MR. DALE:  -- into evidence.

19           THE COURT:  I'm going to let it in.

20           (Exhibit No. 8 was admitted.)

21   BY MR. DALE:

22   Q    Okay.  Now, did you also -- did you also see

23   letters that had been sent by Mayra Blair to

24   Ms. Ortiz at the Blount County Jail?

25   A    Yes, sir.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. DALE:  If I could approach the witness.

2          THE COURT:  Okay.

3          MR. DALE:  (Handing.)  And I don't want to

4    admit these into evidence.  I just want to establish

5    that these are in fact the letters that we're

6    admitting copies of.

7    BY MR. DALE:

8    Q    Have you seen those?

9          MR. CURRIER:  Excuse me, Your Honor.  But

10   if we are here in court, and he's handing documents,

11   and he doesn't want them used as evidence, it seems

12   to me to be inapposite to authenticate them for some

13   other purpose -- or whatever the purpose is for this.

14         THE COURT:  What's the point, Mr. Dale?

15         MR. DALE:  Well, the point is so he can see

16   the originals, and then we can talk about copies that

17   I'm going to admit into evidence.

18         THE COURT:  Okay.

19         MR. DALE:  All right.

20         THE COURT:  I'll overrule the objection.

21   BY MR. DALE:

22   Q    Let's look at Exhibit --

23         THE COURT:  It seems like a simpler way to

24   deal with this -- and we may have to stop the hearing

25   because I've got a whole bunch of other hearings, and

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   we've already been going all this time -- it's just

2   did she write her?  What did she say?  Is this a copy

3   of it?  Thank you.

4            MR. DALE:  Well, there is a reason why I

5   wanted the originals up here also.

6            THE COURT:  Okeydoke.

7   BY MR. DALE:

8   Q    Exhibit 9, is this a copy of the first of the

9   two letters?  Look on the screen, please.

10  A    Yes, sir.

11  Q    Okay.  This is the first of the two letters.

12  What was the date on this, do you recall?

13           THE COURT:  Do you want him to recall, or

14  do you want him to look at the original, or do you

15  want him to look at the copy on the screen?

16  BY MR. DALE:

17  Q    Okay.  Look at the document.  What's the date on

18  that?

19  A    January 28, 2015, sir.

20  Q    Okay.

21           MR. CURRIER:  Your Honor, may I raise one

22  more legal and factual issue?

23           THE COURT:  Well, you can raise the legal

24  issue if you're going to object.  Anything else --

25           MR. CURRIER:  Providence.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          THE COURT:   -- just hold until your proof

2     or cross-examination.

3          MR. CURRIER:  Providence.

4          THE COURT:  Providence, Rhode Island?

5          MR. CURRIER:  These documents have not been

6     authenticated.  The government asserts they are

7     e-mails from so and so to so and so.  Nothing has

8     been shown to show that that is in fact accurate.

9          I raise that issue, Your Honor, because

10    while it does have a question of fact attached to it,

11    it is basically that this document, whatever is being

12    shown for some purpose to prove something, and

13    providence is one of the key issues in most

14    evidentiary questions.

15         THE COURT:  I take that to mean that you

16    haven't shown this came from Ms. Blair.

17         MR. CURRIER:  Correct, sir, or that she had

18    anything to do with it.

19         THE COURT:  Can you do that?

20    BY MR. DALE:

21    Q    Did we talk about these same two letters with

22    Ms. Ortiz on the telephone yesterday?

23    A    Yes, ma'am -- I mean, sir.  I'm sorry.

24    Q    Read her portions of the letters?

25    A    Yes, we did, sir.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    Okay.  Did these letters come from Ms. Blair?

2    A    Yes, sir.

3            MR. CURRIER:  Your Honor --

4    BY MR. DALE:

5    Q    They did?

6            THE COURT:  Well, I mean I get that you're

7    frustrated --

8            MR. DALE:  Yes, sir.

9            THE COURT:  -- but you haven't told me

10   anything.  You hand a guy a letter.  A guy objects

11   that you haven't proven it's from his client, and you

12   get frustrated.  I don't know if it came from his

13   client or not.

14           MR. DALE:  Okay.  Well, I think I've

15   established that now, though.

16           THE COURT:  Well, you said you spoke with

17   Ms. Ortiz and you read her portions of the letter.

18           MR. DALE:  Yes, sir.

19           THE COURT:  How does that establish it came

20   from Ms. Blair?

21           MR. DALE:  We asked her were those

22   letters from Ms. Blair.

23           THE COURT:  Oh, there's the seminal

24   question.

25           MR. DALE:  Yes, sir.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          THE COURT:  Did somebody say it was from

2    Ms. Blair.

3          So you're saying Ms. Ortiz said it was from

4    Ms. Blair.  Is that your testimony?

5          THE WITNESS:  Yes, Your Honor.

6          THE COURT:  Now, what's your objection to

7    that?

8          MR. CURRIER:  They have at least partially

9    repaired it as we are accepting hearsay.

10         THE COURT:  Right.

11         All right.  Now, go ahead.

12   BY MR. DALE:

13   Q    And can you -- let me enlarge this just a bit.

14         MR. CURRIER:  Your Honor, just as a

15   practical matter, as we are getting many documents in

16   Spanish --

17         THE COURT:  Mr. Currier.

18         MR. CURRIER:  Yes, sir.

19         THE COURT:  Let me tell you something.

20         MR. CURRIER:  Yes, sir.

21         THE COURT:  If you continue to extend this

22   hearing with objections that are not objections, and

23   because I have a full docket, and because we were

24   here until six o'clock last night in large measure

25   because of you and what I consider your actions that

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    delayed things, we're going to put your client to the

2    end, and I will finish all the other hearings.  If

3    there is time to get to her, we will.  If there is

4    not, we'll do her next week.

5              MR. CURRIER:  I will stand corrected and --

6              THE COURT:  That's not to say you can't

7    object.  It's to say that the vast majority of your

8    statements you know are not objections.  You know

9    they're improper.  And they are things that are

10   designed to simply make commentary to influence me.

11             Any more I will tell you they're

12   influencing me the wrong way, so continue at your own

13   travail.  Okay?

14             MR. CURRIER:  Yes, sir.

15             THE COURT:  Do I make myself clear?

16             MR. CURRIER:  Very.

17             THE COURT:  All right.  Thank you.

18   BY MR. DALE:

19   Q    I'm going to try to simplify this and just ask

20   this to you this way.  This portion of text that I've

21   circled here, does it translate in English to, "You

22   know I'm going to go to Tepito, Mexico as soon as

23   this passes to keep one of my promises.  And I'm

24   going to close Alcoa to accomplish the second one."

25   A    Yes, sir.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    That's a rough translation --

2    A    Yes, sir.

3    Q    -- that you provided to me.  Is that correct?

4    A    Yes, sir.

5    Q    Okay.  And down at the bottom that begins with

6    [reading document out loud in Spanish] I believe,

7    does this translate to, "I haven't been able to talk

8    to your mom or Itzel (phonetic) because Manuel

9    changed the number?"

10   A    Yes, sir.

11   Q    And do you know Itzel to be her -- to be Diana

12   Ortiz's minor daughter?

13   A    That is correct, sir.

14          MR. DALE:  I'm going to move to admit this

15   into evidence --

16          THE COURT:  Okay.  Do you have any

17   objection?

18          MR. DALE:  -- Exhibit 9.

19          THE COURT:  Hearing none, it will come in

20   as Exhibit 9.  How many pages is it?

21          MR. DALE:  It's a two-page document,

22   including the envelope, Your Honor.

23          THE COURT:  Okay.

24          (Exhibit No. 9 was admitted.)

25   BY MR. DALE:

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    And I'll show you now, sir, what has been marked

2    as Exhibit 10.  And does it have a date -- mailing

3    date of the 23rd of January of this year?

4    A    Yes, sir.

5    Q    And it is addressed from Mayra Blair to Diana

6    Ortiz in the Blount County Jail?

7    A    Yes, sir.

8         Mr. Dale?

9    Q    Yes, sir.

10   A    Can you please center it a little better.

11   Q    Oh, I'm sorry.  (Complying with request.)

12   A    Thank you, sir.

13   Q    And does it state -- the text that I'm going to

14   bracket right here, does this translate to, "This is

15   my third letter that I write to you, but you haven't

16   answered me.  Also I went to see you in the jail.

17   They told me that I'm not on the list, neither is

18   Ana."  Is that correct?

19   A    Yes, sir -- rough translation, yes, sir.

20   Q    Okay.  And the paragraph [reading document out

21   loud in Spanish] translates to Acela (phonetic) and

22   me have not forgotten to ask about you," correct?

23   A    Yes, sir.

24   Q    Who is Acela?

25   A    As per our conversation with Ms. Ortiz on the

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   phone yesterday, she is a common friend of Ms. Mayra

2   back in Mexico.

3   Q    Okay.  Acela Cortez?

4   A    That is correct, sir.

5   Q    Okay.  Do they share a common interest in

6   something?

7   A    As per our conversation with Ms. Ortiz

8   yesterday, yes, they do.

9   Q    What is it?

10  A    The common relationship that they were sharing

11  was that she was -- as per Ms. Ortiz, she was

12  Ms. Mayra's contact in Mexico to be able to obtain

13  some sort of paraphernalia for her -- the magic that

14  she does.

15  Q    For Santa Muerte?

16  A    For La Santa Muerte, yes, sir.

17  Q    And, sir, in your experience with Mexican

18  customs is Santa Muerte something that could cause

19  fear for a person from Mexico?

20  A    In conversations that I have with people that I

21  have encountered in my line of duties yes, sir.

22  Q    What was Ms. Ortiz's reaction emotionally when

23  you raised the issue of Santa Muerte with her

24  yesterday?

25  A    When we were talking on the phone in your

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  office, as stated earlier, once that conversation

2  arised as to talking about La Santa Muerte, I could

3  tell that talking to her over the phone she pretty

4  much came apart as far as started crying.  She pretty

5  much -- you could tell she lost a little bit of

6  control of herself as to how she was going to be able

7  to talk to me on the phone, so I had to talk to her

8  in Spanish and calm her down.

9  Q    Was she frightened?

10  A    Yes, she was.

11  Q    And, sir, did she make a statement to you

12  regarding the placement of her picture on a Santa

13  Muerte figure at Ms. Blair's office?

14  A    That is correct, sir.  Yes, she did.

15  Q    And, sir, I'm going to circle another sentence

16  here and -- beginning with [reading Spanish word out

17  loud] and ask if this sentence reads, "I hope they

18  put a bond on you so I can sign and get you out.  And

19  if I have to go to Mexico for you, all the way over

20  there I will go, and then we will have a plan."

21        Is that a rough translation?

22  A    Yes, sir.

23  Q    Okay.  Sir, in the last letter I showed you it

24  mentioned a Tepita, Mexico.

25  A    Yes, Tepita, Mexico, sir.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  Q    What is significant about Tepita?

2  A    Well, based on my conversation with Ms. Ortiz,

3  and other subjects that I have encountered in the

4  past, it's a place in Mexico where there is a much

5  bigger scale altar for La Santa Muerte.  And people

6  from all over South America, whoever believes in that

7  actual religion, will go over there and do prayers.

8           MR. DALE:  Okay.  If I haven't yet, I'll

9  admit Exhibit 10 into evidence this last -- Exhibit 9

10  rather, this last letter we looked at.

11           THE COURT:  Exhibit 9 was the first.  This

12  is Exhibit 10.

13           MR. DALE:  Exhibit 10.  I'm sorry, Your

14  Honor.

15           THE COURT:  All right.  Any objection?

16           MR. CURRIER:  I would ask for the future at

17  least the rule of completeness.

18           THE COURT:  Overruled.  It will come in as

19  Exhibit 10.

20           (Exhibit No. 10 was admitted.)

21           MR. DALE:  No further questions of this

22  witness.  Thank you.

23           THE COURT:  I want to ask a question and

24  see if you want to follow up, Mr. Dale.

25           MR. DALE:  Certainly.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1        THE COURT:  You asked did Ms. Ortiz make a

2    statement or comment regarding the picture that was

3    on the Santa Muerte.  He said, "Yes."  What did she

4    say?

5        THE WITNESS:  Your Honor, based on the

6    conversation that I had with Ms. Ortiz yesterday over

7    the phone -- and I explained to her and told her

8    about her picture in the Santa Muerte altar -- she

9    expressed to me that her first belief -- her first

10   belief with her picture on the altar was to mean good

11   for her, to prosper.

12        But as per her own experience in her own

13   words that she told me yesterday in our conversation

14   over the phone, as she's been in jail and she's been

15   able to be exposed to Jesus Christ and been able to

16   read the Bible in jail and be able to talk to other

17   people, she has clearly seen that the whole purpose

18   of her picture that she believed was for good it was

19   definitely on her own beliefs to be a harm for her,

20   sir.

21        THE COURT:  Okay.  Thank you.

22        THE WITNESS:  That is the best recollection

23   as per our conversation, Your Honor.

24        THE COURT:  All right.  Thank you.

25        MR. DALE:  I'm not going to ask questions

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    at this time about the original documents.  We'll

2    just let that go for this point.

3            THE COURT:  Okay.  All right.  Let's talk

4    about what we're going to do.

5            So it's right to you, Mr. Currier.  How

6    much time do you envision with cross-examination with

7    this witness?

8            MR. CURRIER:  Bearing in mind Your Honor's

9    stricture and his --

10           THE COURT:  The Court has no stricture.

11           MR. CURRIER:  -- I don't think I'm going to

12   make -- ask any questions of this witness.  He's

13   translated documents.  He's made statements.  He's

14   recited what he was told.  And I have no basis to

15   question his integrity or his translations.

16           I've had my translator --

17           THE COURT:  I take that as the answer, I

18   have no cross-examination.

19           MR. CURRIER:  Thank you, sir.

20           THE COURT:  All right.  Do you have any

21   other witnesses, Mr. Dale?

22           MR. DALE:  I would recall Special Agent

23   Grove just for one point that needs to be clarified

24   regarding the licenses.

25           THE COURT:  What is the point, and maybe

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   you can make it as a proffer?

2          MR. DALE:  I'd be happy to do that; just

3   that the point is that this offense with which

4   Ms. Ortiz -- Ms. Blair is charged involves the use of

5   falsified documents, including falsified licenses.

6   And that is the relevance.

7          THE COURT:  I think that's in the

8   Indictment, isn't it?

9          MR. DALE:  It is, Your Honor.

10         THE COURT:  All right.  I don't need to

11  hear him tell me what's in the Indictment.

12         MR. DALE:  Very good.  I have no further

13  questions for this witness.

14         THE COURT:  Do you have any further

15  witnesses?

16         MR. DALE:  No further witnesses.

17         THE COURT:  All right.  You may step down.

18  Thank you.

19         THE WITNESS:  Your Honor, I thank you.

20         THE COURT:  All right.  You may step down.

21         Do you have any -- how long do you think

22  your proof will take to put on, Mr. Currier?

23         MR. CURRIER:  Probably about -- less than

24  40 minutes, maybe less than 20.  I'll make it as fast

25  as I can, Your Honor.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          I don't want this lady staying in jail, and

2    I don't want any action of mine to do it.  I intend

3    to put her on.  I intend, as I said, to put on a

4    Ms. Anabel Orduna, a Ms. Lenora Martin -- I'll skip

5    Ms. Schultz -- and George Coode, who is here in the

6    office, and who is a CPA -- here in the courtroom.

7          THE COURT:  And what are they going to be

8    offered for?

9          MR. CURRIER:  They're going to be offered

10   for several things.  Ms. Orduna is the woman who

11   worked in the office at which my client was arrested.

12   She has been running that office for years and has

13   known the client for years.  She's going to speak to

14   the practices of the office, the accuracy of various

15   things, including the e-mails, which Your Honor has

16   admitted, pointing out that the mayramoreno822@gmail

17   is a business e-mail, not one -- and the employees

18   had access to it.  So the facts asserted by the

19   government that this was from Mrs. Blair has not in

20   fact been shown.

21          I intend to proffer to the Court a general

22   background of her involvement in -- Mrs. Blair's

23   involvement with The General Insurance Company and to

24   present -- I was originally planning through

25   Mrs. Blair -- a check, a copy of which I've already

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  provided to the government, for $27,130 from her

2  insurance company as a bonus for continued -- credits

3  for her work as a legitimate insurance person, thus

4  showing legitimate access to money, and a document,

5  which I will be able to show that the government

6  through probably sheer inadvertence did not bother to

7  pick up that is one of the things they supposedly are

8  trying to claim are proceeds of evil and provide a

9  reason for this woman to run away.

10      In fact, these are things to pay for the

11  continuation of her business, to show that she's

12  doing it.

13      In terms of Lenora martin I expect to show

14  a long-term commercial and personal friendship,

15  showing that she is a good woman and able to do this.

16      Through both people -- and I would have

17  used Ms. Schultz to show that Ms. Blair's elder

18  daughter had a 15-year celebration, a kind of a

19  Mexican Sweet 16, which they all attended and they --

20  and among other people who were there were the

21  children of which my colleague has been talking.

22      And Mr. Coode is going to talk about the

23  documents in question and the financial general

24  records that we know about so far and the threat or

25  the actual likelihood of success of the government's

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    case based on our analysis of what we have.

2              THE COURT:  I'm not trying this case.

3              MR. CURRIER:  No, sir.  I'm not trying to

4    do that.

5              THE COURT:  Well, if you're going to have

6    somebody testify about the likelihood of success of

7    their case --

8              MR. CURRIER:  May I point out that my

9    colleague has just asserted to the Court that one of

10   the reasons she should flee is the likelihood of the

11   government's success.  I respectfully assert that is

12   perhaps a misplaced argument, but that is argument

13   and not an objection.

14             THE COURT:  All right.  Let's keep it to

15   those issues.  Let's remember this is a detention

16   hearing only.

17             If I totally agreed with Mr. Dale that your

18   client was totally guilty, I could do nothing about

19   that.  If I found that your proffer was that she was

20   totally not guilty, I could do nothing about that.

21   I'm not deciding guilt.

22             MR. CURRIER:  I know that, sir.

23             THE COURT:  I'm trying to decide if they

24   established a case for the fact that she would be a

25   risk of flight if she was out on release or if she

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    would be a danger.

2              MR. CURRIER:  Right.

3              THE COURT:  Okay.

4              MR. CURRIER:  I intend to add one thing

5    from Mrs. Blair, that she has not in fact ever been

6    convicted of any offense, and thus, the likelihood

7    that she should qualify for detention approaches

8    zero.

9              THE COURT:  Okay.  Call your first witness.

10             MR. CURRIER:  Anabel Orduna.

11             Ms. Orduna, come on down.

12             I don't know that this witness has been

13   sworn.

14             THE COURT:  She's about to be.

15             THE COURTROOM DEPUTY:  Raise your right

16   hand.

17             Do you solemnly swear or affirm your

18   testimony will be the truth, the whole truth, and

19   nothing but the truth, so help you God?

20             THE WITNESS:  I will.

21             THE COURTROOM DEPUTY:  Be seated.

22             State and spell your name for the record.

23   BY MR. CURRIER:

24   Q    Ma'am --

25             THE COURT:  She just said, State and spell

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    your name for the record.  Let her do so.

2          THE WITNESS:  My name is Anabel Orduna.

3          THE COURT:  Spell it.

4          THE WITNESS:  A-n-a-b-e-l; Orduna,

5    o-r-d-u-n-a.

6          THE COURT:  Thank you, ma'am.

7                    ANABEL ORDUNA,

8            having been first duly sworn, was

9            examined and testified as follows:

10                  DIRECT EXAMINATION

11   BY MR. CURRIER:

12   Q    What do you do for a living?

13   A    Working.

14   Q    Where?

15   A    With Mayra Moreno Insurance.

16   Q    Where?

17   A    Kingston Pike.

18   Q    Okay.  In the course of preparing for this

19   session did you see and show me some documents?

20   A    Yes.

21   Q    Was one of those documents a letter from a lady

22   who is currently in jail, Ms. Ortiz?

23   A    Yes.

24          MR. CURRIER:  Okay.  I have tendered a copy

25   previously to the government.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    BY MR. CURRIER:

2    Q    And I show this document to you.  I'm going to

3    show it on the view screen.  Did you hand me that

4    document?

5    A    Yes.

6    Q    Okay.  Is this the back of that document?

7    A    Yes.

8    Q    What is the document and in what language is it

9    written?

10   A    It is a letter from Diana Ortiz, and it is in

11   Spanish.

12   Q    Okay.  Do you speak Spanish fluently?

13   A    Yes.

14   Q    Are you here in the United States with

15   permission to work --

16   A    Yes.

17   Q    -- under the BACA (phonetic)?

18   A    Yes.

19   Q    Okay.  Does this letter in any way threaten

20   Ms. Ortiz (as stated)?

21   A    No.

22          MR. CURRIER:  Subject to my asking her to

23   read it, I'm not trying to delay proceedings --

24          THE COURT:  Well, I'm totally confused.  I

25   thought it was a letter from Ms. Ortiz.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. CURRIER:  It is.

2          THE COURT:  And your question was, Is it a

3    letter to threaten Ms. Ortiz?

4          MR. CURRIER:  Sorry.  I beg your pardon,

5    Your Honor.  You are correct in correcting me.  I'm

6    wrong.  I misspoke.

7    BY MR. CURRIER:

8    Q    Does this letter discuss Mayra Morena Blair?

9    A    Yes.

10   Q    Okay.  What does it say about Ms. Blair?

11   A    Okay.  It say -- about Ms. Blair?

12   Q    Uh-huh.

13   A    Okay.  What our understanding is Mayra Morena is

14   trying to make her looking like she's the --

15         I need a translator.

16         MR. CURRIER:  Okay.  Shall we swear in a

17   translator?

18         THE COURT:  Just tell me what you can't

19   get.

20         THE WITNESS:  Okay.  Why she say -- she no

21   say a name, but she say -- she cannot put me on the

22   visitor list, because I'm asking for her to put me on

23   the visiting list where I can, you know, visit her.

24   And she told me she can't put on the visiting list

25   because she working for Mayra.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          THE COURT:  Do you know what she's saying?

2          MR. CURRIER:  I know what Ms. Orduna is

3    saying.  She is saying that Ms. Ortiz says that she

4    will not be able to put Ms. Orduna on Ms. Ortiz's

5    visiting list at the Blount County Jail because she

6    is still an employee of my client, Mrs. Blair.

7          THE WITNESS:  And she say that Mayra trying

8    to make her guilty to all this stuff.  And she say

9    God bless you all.  And she tell me to say the truth

10   about -- all the truth to the investigation people.

11   And she say that she -- she say that I'll be trying

12   to be safe, because if I be with Mayra, I'm not going

13   to be safe.

14   BY MR. CURRIER:

15   Q    Okay.  Does this express fears by Ms. Ortiz of

16   Mrs. Blair?

17   A    I don't understand.

18   Q    Does Ms. Ortiz, who wrote you this letter, who

19   you know --

20   A    Uh-huh.

21   Q    -- imply that she is terrified of this woman or

22   afraid of her?

23   A    No.

24          MR. DALE:  Your Honor, the letter says what

25   it says.  I can't read it, but asking what it implies

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    is objectionable.

2            MR. CURRIER:  Well, I would say sauce for

3    the goose, but I won't.

4            THE COURT:  All right.  So did I understand

5    her to say that part of it says, "with Mayra I'm not

6    going to be safe?"

7            THE WITNESS:  If I stay with Mayra, I'm not

8    going to be safe.

9            THE COURT:  Oh, if you, Anabel --

10           THE WITNESS:  Yes, if I still working for

11   Mayra Moreno, I'm not going to be safe.

12           THE COURT:  Gotcha.  Okay.  Thank you.

13           Go ahead.  You can ask the question as to

14   how she took it.

15   BY MR. CURRIER:

16   Q    How do you take it?

17   A    Like she's trying to put me on -- Mayra -- like

18   she wants -- I tell Mayra she's a bad person.

19   Q    Okay.  Is this a document which you received,

20   and is this an accurate copy of it?

21   A    Yes.

22           MR. CURRIER:  We move that this be admitted

23   as the next exhibit.

24           THE COURT:  Well, I guess that's okay.  I

25   mean, I don't really know what-all it says.  It's in

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Spanish.

2              MR. CURRIER:  I understand that, Your

3    Honor.  And I was very mindful of what Your Honor

4    said and my obligation to my client to do the best I

5    can to get her out quickly.  I will be happy to

6    either have a certified translator provide a

7    translation of this on the record or to submit later

8    a translation, if the Court wishes to do that.

9              THE COURT:  Yes, Mr. Dale.

10             MR. DALE:  Your Honor, that may all be

11   well, but I don't see where this has any relevance.

12   This is a letter from -- purportedly from Diana Ortiz

13   to Ms. Orduna so --

14             THE COURT:  It certainly seems like

15   Ms. Ortiz is the subject of this hearing, and

16   obviously the only person not here today --

17             MR. DALE:  Yes.

18             THE COURT:  -- with all the people in the

19   courtroom is Ms. Ortiz.

20             MR. DALE:  Well, that's exactly right, Your

21   Honor.

22             THE COURT:  You spent well over an hour and

23   a half talking about her, her letters and her

24   e-mails.  I guess I can let him spend five minutes.

25   I have no idea why you're admitting it or what it

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    does to help your client, but I can't keep you from

2    putting it in.

3            MR. DALE:  Well, Your Honor, we would ask

4    that it be an actual translation of the document.

5            MR. CURRIER:  We will comply with whatever

6    the Court instructs.

7            THE COURT:  You can make it an exhibit as

8    is.  She's interpreted the part of it that she wants

9    to -- the part you asked her about that related to

10   Ms. Blair.  If Mr. Dale wants to translate other

11   parts of it, he may do so.

12           MR. CURRIER:  Very good.  This may be the

13   next numbered exhibit.  Do you want the original,

14   Your Honor?  I have a photocopy --

15           THE COURT:  A copy will be fine.

16   Exhibit 11.

17           MR. CURRIER:  Thank you, Your Honor.

18           THE COURT:  Did you hand up a copy of the

19   letter?

20           MR. CURRIER:  I'm sorry.  I did hand it up

21   before the hearing.  I'd be happy --

22           THE COURT:  Do you have that, Julie?  If

23   not, I have mine.

24           MR. CURRIER:  Can I approach your clerk?

25           THE COURT:  I have one.

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. CURRIER:  Thank you.

2          (Exhibit No. 11 was admitted.)

3    BY MR. CURRIER:

4    Q    Okay.  Ma'am, there have been a number of

5    e-mails on the screen.  One of them has an e-mail

6    address mayramoreno822@gmail.com.  Are you familiar

7    with that e-mail address?

8    A    Is a business e-mail.

9    Q    Do you have access to it?

10   A    Yes.

11   Q    Did Ms. Ortiz when she was working have access

12   to it?

13   A    Yes.

14   Q    Do all the employees have access to it?

15   A    Yes.

16   Q    Okay.  So if an e-mail is sent from

17   mayramoreno822@gmail.com, does that mean that

18   Mrs. Blair, the human being -- Mrs. Mayra Edith

19   Blair, the human being in this courtroom who is on

20   trial, have anything to do with it directly?

21   A    No, because everybody going to that e-mail.

22   Q    Okay.  Now, does she have a separate e-mail

23   address which is personal?

24   A    She have a Yahoo account -- e-mail from Yahoo.

25   Q    How long have you been her secretary?

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

```
 1    A     One year and three months.

 2    Q     Okay.  All right.  Are you familiar with the way

 3    the business is operated?

 4    A     Yes.

 5    Q     Do you see -- what do people do?

 6    A     Buy insurance.

 7    Q     Okay.  And when they do, what do they do?

 8    A     Can you repeat the question because I don't --

 9    Q     When they are buying insurance, what do they do?

10    Do they come into the office?  Do they give you

11    checks?  What do they do?

12    A     No.  They come to the office, and we put the

13    information all in the computer, asking for

14    identities, like driver's license, passport.  And if

15    they agree, we sell the insurance with the prices,

16    you know, the computer giving us.  And they pay cash,

17    check, or credit card.

18    Q     Okay.  And do you routinely handle the money

19    that comes in and goes out?

20    A     Yes.

21          MR. CURRIER:  Okay.  May I tender to the

22    witness this document, which is on its side to fit

23    into this screen?  I don't know if it shows.  Sorry.

24    Let me turn it this way.

25
```

Electronically signed by Lynda Clark (601-377-188-1426)                                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    BY MR. CURRIER:

2    Q    Are you familiar with this document?

3    A    Yes.

4    Q    What is that document?

5    A    It is a check that Mayra show me on Thursday --

6    Wednesday that she have her bonuses for The General.

7    Q    Meaning The General pays her?

8    A    The General pays her.

9    Q    As part of her commission for selling insurance?

10    A    Yes.

11    Q    Okay.  And was this check physically in her

12    possession at the time of her arrest?

13    A    Yes.

14    Q    Okay.  If you know, where was it?

15    A    In her purse.

16    Q    And her purse was --

17    A    At the office.

18    Q    Okay.  More precisely was it in her car parked

19    at the office?

20    A    Do what?

21    Q    Was it in her automobile parked at the office?

22    A    Yes.

23         MR. CURRIER:  Okay.  Now, we would offer

24    this as the next exhibit, Your Honor.  And I'm

25    willing to substitute a photocopy --

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          THE COURT:  That's fine.

2          MR. CURRIER:  -- as this is a negotiable

3    check.

4          THE COURT:  Exhibit 12.  A copy will come

5    in.

6          (Exhibit No. 12 was admitted.)

7          MR. CURRIER:  Thank you.

8    BY MR. CURRIER:

9    Q    Now, is this one of the normal business

10   proceeds?

11   A    Yes.

12   Q    Do you routinely handle portions of the books

13   and records of the business?

14   A    Yes.

15   Q    Does Ms. Blair do that herself as well?

16   A    Yes.

17   Q    Did in the past Ms. Ortiz do that?

18   A    Yes.

19   Q    Okay.  Did other people who worked for you do

20   that?

21   A    Yes.

22   Q    Okay.  What does she do with her money?

23   A    Her own money or business money?

24   Q    The business money like this.

25   A    Well, you'll deposit on the accounts -- the

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   business accounts --

2   Q    Uh-huh.

3   A    -- for, you know, The General take the money out

4   for the payments of the persons.

5   Q    Okay.  So in so far as you know what's going to

6   happen, would she normally use business receipts for

7   doing things like paying your salary?

8   A    Yes.

9   Q    How much do you make?

10  A    I make ten an hour, and I work 35 to 45 hours a

11  week.

12  Q    Okay.  Are there other people who work for

13  Mrs. Blair?

14  A    Yes.

15  Q    Who?

16  A    Now?

17  Q    Now and in the past.

18  A    Okay.  There's another girl in Sevierville.

19  Q    And who is that?

20  A    I don't know her.  I just know about her name.

21  Q    Okay.  What's her name?

22  A    Dahlia -- Dahlia -- Dahlia (phonetic).

23  Q    Okay.  Is she still working for Ms. Blair?

24  A    Yes.

25  Q    Does she get paid, or do you know?

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    A    Yeah, she get paid.

2    Q    Do you know how much she's paid?

3    A    I don't have no idea.

4    Q    Okay.  Did Mrs. Blair hide this check from you

5    or make it seem somehow something she was going to

6    try and run away with?

7    A    No.  She show me.

8    Q    Okay.  Thank you.

9         Now, when did she show it to you again?

10   A    Like Wednesday -- Wednesday morning.

11   Q    Okay.

12            MR. CURRIER:  Excuse me, Your Honor.

13   BY MR. CURRIER:

14   Q    Do you have children?

15   A    Two.

16   Q    Have you visited with Ms. Blair and her family?

17   A    Never visiting, but we around with her kids and

18   my kids.

19   Q    Do you know her kids?

20   A    Yes.

21   Q    How many children does she have?

22   A    Two.

23   Q    What sex and age?

24   A    Females, and one is 15, and the other one is

25   like seven, eight.

Electronically signed by Lynda Clark (601-377-188-1426)                          229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    Okay.  Have you ever been to a party held by the

2    Blairs for the older child?

3    A    No.

4    Q    Okay.  Do you consider Ms. Blair as well as an

5    employer as a friend?

6    A    Yes.

7    Q    Do you think she has a reputation in the

8    community for truthfulness?

9    A    Yes.

10   Q    What is that reputation?

11   A    It's good.

12   Q    Okay.  Do you know of your own personal

13   knowledge that she is in fact a U.S. citizen?

14   A    Yes.

15            MR. CURRIER:  Okay.  No further questions

16   at this time.

17            THE COURT:  Mr. Dale.

18            MR. DALE:  Yes, Your Honor.

19                  CROSS-EXAMINATION

20   BY MR. DALE:

21   Q    So do you consider yourself to be a truthful

22   person?

23   A    Yes.

24   Q    This letter you were shown, Exhibit 11, could

25   you perhaps point out on there where the word Mayra

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    appears?

2    A    No, is no word that say Mayra.

3    Q    It's nowhere on there, is it?

4    A    Unh-unh.

5    Q    You're not legally in the United States, are

6    you?

7    A    I have a worker's permit.

8    Q    You've applied for a permit, but it's still in

9    processing.  Is that right?

10   A    No.  I have a permit.

11   Q    Do you have the permit?

12   A    Yep.

13   Q    So you don't have a pending application for a

14   deferred status?

15   A    Yes.

16   Q    A pending application for deferred status?

17   A    No.  I have my status.

18   Q    Okay.

19   A    Yeah.

20   Q    Are you a notary public?

21   A    Yes.

22   Q    Okay.  Even though you're not a U.S. citizen?

23   A    Yes.

24   Q    Now, isn't it true that in April of 2014 you

25   applied for a notary stamp with Knox County, and you

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    used the name Anabel Orduna.  That's right, isn't it?

2    A    Yes.

3    Q    And it was denied because you're not a U.S.

4    citizen?

5    A    Yes.

6    Q    It was denied?

7    A    Yes.

8    Q    And then you went to a different location, and

9    you applied under the name Anabel Ornelas, didn't

10   you?

11   A    No, it was the same location.

12   Q    Okay.  So what I'm saying isn't correct?

13   A    Yes.

14   Q    Okay.  So if I were to show you your notary

15   application, that would be totally true?

16   A    Yes.

17   Q    And you understand the penalties of perjury for,

18   in other words, lying on that witness stand, don't

19   you?

20   A    Yes.

21              MR. DALE:  Okay.  Nothing further at this

22   time.

23              THE COURT:  Okay.

24              MR. CURRIER:  One question on redirect.  I

25   discussed, Your Honor, the wording of the postcard

Electronically signed by Lynda Clark (601-377-188-1426)          229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    from the jail from Ms. Ortiz and such.  The point has

2    been made that Mayra's name was not on here.

3                         REDIRECT EXAMINATION

4    BY MR. CURRIER:

5    Q    Ma'am, in response to the Attorney General's

6    question -- the Deputy U.S. Attorney's questions you

7    said that Mayra's name was not on here.  Is that

8    true?  Mayra's name is not on here?

9    A    Is not here.

10   Q    Okay.  But you believe -- or do you believe that

11   this refers to Mayra?

12   A    Yes, because --

13   Q    Please show us why and indicate it.  And you can

14   use your finger if you need to or maybe --

15        May she come up here and --

16             THE COURTROOM DEPUTY:  (Showing.)

17             THE WITNESS:  Oh, okay.  When I write her

18   the letter, I still working in there because I have

19   to work.  I have my own family.  So when she reply me

20   back, she say she cannot put me on the visiting list

21   because I still working there.

22   BY MR. CURRIER:

23   Q    Okay.

24   A    Okay.  So that make sense because I still am

25   working for them.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. CURRIER:  Okay.  Thank you.  No further

2     questions.

3          MR. DALE:  No recross.

4          MR. CURRIER:  We would ask that this

5     circled electronic exhibit be admitted if that can be

6     done.

7          THE COURT:  Well --

8          MR. CURRIER:  If not, we'll --

9          THE COURT:  I can't confirm that's what it

10    says, because I don't speak Spanish.

11         MR. CURRIER:  I will tender this and offer,

12    as I already have, and will provide a certified

13    translation from a court certified translator.

14         THE COURT:  That won't be necessary.  She's

15    testified, and that's all I'll hear.  Be darned if I

16    can figure it out, though, why you want to put on a

17    witness who testifies that it says, Beware of this

18    person.  She's a danger.  Mr. Dale wants to prove

19    she's not talking about Mayra, and then you want to

20    absolutely confirm she is.

21         MR. CURRIER:  I have a reason, Your Honor.

22         THE COURT:  Okay.

23         MR. CURRIER:  I hope I'm not that stupid.

24         THE COURT:  Okay.

25         MR. CURRIER:  Step down, ma'am.

Electronically signed by Lynda Clark (601-377-188-1426)          229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          THE COURT:  You may step down.  Thank you.

2          MR. CURRIER:  Ms. Leono Martin, please.

3          THE COURT:  Come forward.

4          THE COURTROOM DEPUTY:  Raise your right

5    hand, please.

6          Do you solemnly swear to tell the truth,

7    the whole truth, and nothing but the truth, so help

8    you God?

9          THE WITNESS:  Yes.

10         THE COURTROOM DEPUTY:  Will you please

11   state and spell your name for the record.

12         THE WITNESS:  Leono, L-e-o-n-o, Martin,

13   M-a-r-t-i-n.

14         THE COURTROOM DEPUTY:  Thank you.

15                   LEONO MARTIN,

16            having been first duly sworn, was

17            examined and testified as follows:

18               DIRECT EXAMINATION

19   BY MR. CURRIER:

20   Q    Mrs. Martin, what do you do for a living?

21   A    I'm a business owner.

22   Q    Okay.  How many businesses do you own?

23   A    I own several businesses around town, three

24   convenience stores, restaurant, beauty salon,

25   dealership.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   Q     Dealership of what?

2   A     Used cars.

3   Q     Okay.

4   A     A small one.

5   Q     Okay.  How long have you known Mayra Blair?

6   A     Known?  That we talk as friends, in less than a

7   year, but I know her from the community, because she

8   will come to my businesses, offer her -- what she

9   sells.  So she will come to do our tax in my

10  business.  That's all -- we just have -- if someone

11  needs insurance, go to her offices.

12        And that's how I know her first, and after she

13  start having this problem we start talking more and

14  more.  So I know her -- the last year I have known

15  her more.

16  Q     Have you met her children?

17  A     Few times, yes.

18  Q     Did you go to a special celebration of the

19  children's?

20  A     Yes, I was invited.  Uh-huh.

21  Q     And what was that called?

22  A     What is that?

23  Q     What is that celebration called?  What is the

24  name --

25  A     (Spanish word.)

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  Q    -- the celebration to which you were invited.

2  A    Oh, her daughter (Spanish word).

3  Q    Could you spell that -- try.

4  A    It's like equivalent of Sweet 16 in United

5  States.  It's a big party where you celebrate your

6  daughter's 15 years.

7  Q    Fifteenth birthday?

8  A    Right.

9  Q    Now, have you therefore -- do you know her now

10  as a person?

11  A    Uh-huh, yes.

12  Q    Has she been truthful?

13  A    Yes.

14  Q    Does she have a reputation in the community for

15  truthfulness?

16  A    Yes, yes.

17  Q    Okay.  You mentioned you have a car lot.  Do you

18  send customers of yours to her?

19  A    Yes, to buy insurance.

20  Q    Does she pay you to do that?

21  A    Even my employees -- some of my employees have

22  bought insurance from her.

23  Q    But do you pay her --

24  A    No, no me.  I haven't bought insurance.

25  Q    So those people do it on their own?

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  A    Yes.  I will send them, and they will do

2  business with her.

3  Q    But you don't care really who they buy insurance

4  from?

5  A    No, no.

6  Q    They can buy it from State Farm?

7  A    Yes.

8  Q    Okay.  Now, did you also know Diana Ortiz?

9  A    No, never talked to her.  I think I saw her

10 once, but I never talk to her.

11 Q    Okay.  Do you remember the occasion you saw her?

12 A    I think it was in that party, the --

13 Q    The fifteen-year-old's celebration?

14 A    Uh-huh, yes.

15 Q    Okay.  Now, was she there?

16 A    Diana?

17 Q    Yes.

18 A    I think so.

19 Q    Was her daughter there?

20 A    Mayra's daughter?

21 Q    No.

22 A    Diana --

23 Q    Yes.

24 A    No, I don't know Diana's daughters.

25 Q    Okay.  Were Mayra's daughters there?

Electronically signed by Lynda Clark (601-377-188-1426)                229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    A    Yes, Mayra's daughters.

2    Q    So Ms. Ortiz knows Mayra's daughters?

3    A    Yes.  For what I understand they were friends.

4    Q    Okay.  Fair enough.  Now, as a business woman,

5    has she ever to your knowledge -- or has anyone ever

6    asserted that she did something improper, wrong,

7    dangerous, harmful to others?

8    A    Mayra?  No.

9    Q    Mayra.

10   A    No.

11        MR. CURRIER:  Okay.  Please answer any

12   questions my colleague has.

13        THE COURT:  All right, Mr. Dale.

14              CROSS-EXAMINATION

15   BY MR. DALE:

16   Q    So you've known her as a friend for a year?

17   A    Uh-huh.

18   Q    No longer than a year?

19   A    No.

20   Q    Okay.  And you send people to her to buy

21   insurance?

22   A    Yes, I refer her.  I refer her.

23   Q    Okay.  And some of those are people who couldn't

24   get insurance through another agent?

25   A    I don't know that.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    Some of those are people not in the country

2    legally?

3    A    I don't know that.  People will ask me, "Where

4    can I get insurance.  Go to Mayra Moreno."  There is

5    a lot of people doing the same business.

6              MR. DALE:  No further question of this

7    witness.

8              THE COURT:  When was the party?

9              THE WITNESS:  Last year in November.

10             THE COURT:  When?

11             THE WITNESS:  Last year in November I

12   think.

13             THE COURT:  Okay.  Thank you.

14             MR. CURRIER:  Thank you, Your Honor.

15             THE COURT:  You may step down.

16             Next witness.

17             MR. CURRIER:  George M. Coode, spelled

18   C-o-o-d-e, Jr., CPA.

19             THE COURT:  Mr. Coode, come forward.

20             MR. CURRIER:  This will go into the

21   likelihood of flight, among other things.

22             THE COURTROOM DEPUTY:  Raise your right

23   hand.

24             Do you solemnly swear that your testimony

25   will be the truth, the whole truth, and nothing but

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    the truth, so help you God?

2             THE WITNESS:  I do.

3             THE COURTROOM DEPUTY:  Okay.  Have a seat

4    and spell your name for the record.

5             THE WITNESS:  My name is George Mangle

6    Coode, Junior.  That is G-e-o-r-g-e, M-a-n-k-e-l,

7    C-o-o-d-e, Junior.

8             THE COURTROOM DEPUTY:  Thank you, sir.

9             THE WITNESS:  Abbreviated.

10                  GEORGE M. COODE, JR.,

11               having been first duly sworn, was

12               examined and testified as follows:

13                  DIRECT EXAMINATION

14   BY MR. CURRIER:

15   Q    Okay.  And what do you for a living, sir?

16   A    I'm a certified public accountant.

17   Q    Do you practice here in Knoxville, Tennessee?

18   A    Yes, sir.

19   Q    Okay.  Did I have occasion to visit your office

20   and pay you a fee to help do some work on this case?

21   A    Yes, sir.

22   Q    And how much did I pay you?

23   A    You were there for a number of hours.  I believe

24   you paid me 500 -- maybe even a thousand dollars.  I

25   don't recall off the top of my head.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    Okay.

2    A    It was a retainer of sorts.

3    Q    All right.  Did we talk about Ms. Blair and her

4    problems with the federal government?

5    A    Yes, we did.

6    Q    Was that following the search warrant, which she

7    was the subject?

8    A    Almost immediately following the search warrant.

9    Q    Okay.  Did you have any other meetings with

10   Mrs. Blair?

11   A    Yes.

12   Q    Okay.  In those meetings did we -- did you talk

13   about taxes and taxation and her liabilities and what

14   she should do and what she shouldn't?

15   A    She has I believe twice come to my office with

16   tax returns that she had prepared after she had

17   obtained her own PTIN, and we discussed some of the

18   technicalities of those tax returns.

19   Q    What is a PTIN?

20   A    Practitioner's tax identification number.

21   Q    And what is the significance of having one?

22   A    It allows you to file tax returns with the

23   Internal Revenue Service.

24   Q    As a tax preparer?

25   A    As a tax preparer -- as a paid tax preparer.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  Q    Okay.  And have you had occasion to look at a

2  number of documents that we have had so far in this

3  case?

4  A    I haven't seen other than a little bit that was

5  on the screens, but no.

6  Q    Okay.  Did Mrs. Blair seem to be helping prepare

7  for this case in your professional opinion?

8  A    Could you rephrase that, please.

9  Q    Sure.  Did Mrs. Blair from her questions and her

10  behavior and so on over several weeks seem to be

11  trying to prepare for what might come in this

12  courtroom?

13  A    No, not in my office.  In my office we were

14  discussing the tax returns that she was preparing and

15  her plans.  I encouraged her to get away from tax

16  returns and that she has a much more lucrative

17  insurance practice where she should be devoting her

18  time.

19  Q    Okay.  Did you in those meetings and as part of

20  them have a chance to make an assessment based on

21  what we knew of the government's case as an

22  accountant as to what her liabilities might be?

23  Obviously you are not a lawyer.

24  A    Obviously I'm not a lawyer.  As an accountant, I

25  noted that several of the things that she did were

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    improper, such as preparing tax returns and then

2    sending them off to someone else who was the PTIN on

3    them, and then still collecting the fees for it.

4    That sort of stuff is improper.

5        Some of the tax returns that were forwarded were

6    rejected, as I recall, and she was asked to sign the

7    returns herself.  I found all of that very

8    objectionable.

9    Q    Okay.  But from your knowledge, and you are a

10   professional in the field, was this money

11   laundering -- excuse me.  Let me get the precise

12   words.  Was this submitting false claims, mail fraud,

13   wire fraud, money laundering?

14   A    No.

15   Q    Okay.  Why not?

16   A    Because she was preparing tax returns and

17   mailing them off to the Internal Revenue Service.

18   She was preparing them to the best of her ability,

19   which I consider somewhat limited.

20   Q    Okay.  Are you familiar with her getting a PTIN?

21   A    She told me that she had obtained her own PTIN a

22   couple weeks ago when she was in my office and had

23   questions about some returns that she had prepared --

24   Q    Okay.

25   A    -- before she sent them off.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Q    Okay.  With the -- are you familiar with how

2    much work it would take a lay person to acquire a

3    PTIN?

4    A    I'm not familiar with how much it takes.  I

5    assume virtually no effort at all.  You go online,

6    and you can have it with, you know, filling out

7    forms.

8    Q    Okay.  All right.  So that then in your opinion

9    would have no indication as to whether or not she was

10   going to plan to be here and keep working?

11   A    Well, if she was planning -- yeah, I think if

12   she was planning to be here and keep working, she

13   would have obtained the PTIN.

14        If she was not planning on staying, then I doubt

15   seriously she would have gone to the trouble, because

16   it is, you know, somewhat a pain.  It's also

17   extremely ineffective, but that's an IRS problem.

18   Q    Okay.  Thank you.

19        You have no personal knowledge of Mrs. Blair?

20   A    No.

21   Q    Okay.  Would it be unusual for a business to

22   receive a check such as the one previously admitted

23   as an exhibit such as the one you see on your screen?

24   I'm sorry it's sideways.

25        Would it be unusual for a business that was an

Electronically signed by Lynda Clark (601-377-188-1426)                229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    insurance agency to receive such a check?

2    A    No.

3    Q    Would that be something that would happen in the

4    normal course of a lawful business?

5    A    Yes.

6    Q    Okay.  From what you know of this case does the

7    government appear to have a strong case that we'll

8    see in the future for conspiracy --

9    A    I don't know enough of this case to answer that.

10           MR. DALE:  I object to that.

11           THE COURT:  He doesn't know.

12           MR. CURRIER:  Fair enough.  Thank you.

13    Further questions of this witness.

14           THE COURT:  All right.  Mr. Dale.

15                  CROSS-EXAMINATION

16    BY MR. DALE:

17    Q    So, Mr. Goode, my name is Frank Dale --

18    A    Coode.

19           THE COURT:  Coode.

20           MR. DALE:  Oh, I'm sorry.  Coode.

21           THE WITNESS:  C-o-o-d-e.

22           MR. DALE:  Very good.

23    BY MR. DALE:

24    Q    And it's true, isn't it, that Ms. Blair got her

25    PTIN in January 2015?

Electronically signed by Lynda Clark (601-377-188-1426)          229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    A    I assume so, yes.  I do not know for certain

2    when she got it.

3    Q    Well, she didn't get it earlier this week, did

4    she?

5    A    I don't know when she got it.

6    Q    Okay.

7    A    I knew she did not have one when she was in my

8    office the first time.

9    Q    When was that?

10    A    I don't recall exactly, but it was immediately

11    after the search warrants.

12    Q    Okay.  Well, she didn't get it after she was

13    indicted, did she?

14    A    I don't know when she was indicted.

15    Q    Okay.  Well, she was indicted last week, for

16    instance.

17    A    Well, I assume -- she was in my office twice

18    before last week with tax returns and had already

19    obtained her PTIN at that point.

20    Q    Okay.  Do you say that Mr. Currier came and met

21    with you and you looked at documents in conjunction

22    with Ms. Blair?

23    A    I don't recall what documents we looked at.  We

24    discussed the case.  We discussed her involvement in

25    the preparation of tax returns with a third party's

Electronically signed by Lynda Clark (601-377-188-1426)                229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  PTIN on it and that there were some issues with some

2  of those tax returns.

3  Q    Okay.  Did you call the IRS to ask what kinds of

4  charges could be brought?

5  A    No.

6  Q    Okay.  Did you go to the IRS and look at the

7  documents that were seized?

8  A    No.

9          MR. DALE:  No further questions at this

10  time.

11         THE COURT:  Okay.  Anything further?

12         MR. CURRIER:  I'll keep my word to you,

13  Your Honor, no.

14         THE COURT:  All right.  You may step down.

15         THE WITNESS:  Thank you.

16         THE COURT:  Next witness.

17         MR. CURRIER:  Oh, I'm sorry, Your Honor.  I

18  misspoke.

19         THE COURT:  Okay.

20         MR. CURRIER:  I did announce to the Court

21  before that I wanted to call Mrs. Blair.

22         THE COURT:  I just said any more questions

23  of this witness.

24         MR. CURRIER:  No more questions of this

25  witness.

Electronically signed by Lynda Clark (601-377-188-1426)          229d09fc-df83-4b83-8c7b-0f2432adc2c0

1           THE COURT:  All right.  Call your next

2     witness.

3           MR. CURRIER:  Mrs. Blair.

4           THE COURT:  I'm going to have to advise

5     Ms. Blair of her rights again --

6           MR. CURRIER:  Yes, sir.

7           THE COURT:  -- so you understand that?

8           MR. CURRIER:  I do.  And while she's

9     walking up I would ask that this Court restrict the

10    cross-examination to the issues germane to today.

11          THE COURT:  I do.

12          MR. CURRIER:  Thank you.

13          THE COURTROOM DEPUTY:  If you would raise

14    your right hand, please.

15          Do you solemnly swear to true answers make

16    to all questions asked of you as you shall answer

17    under God; if so, please say, I do.

18          THE WITNESS:  I do.

19          THE COURTROOM DEPUTY:  Have a seat.

20          State and spell your name for the record.

21          THE WITNESS:  My name is Mayra, M-a-y-r-a,

22    Edith, E-d-i-t-h, Blair -- I'm sorry -- Blair,

23    B-l-a-i-r.

24          THE COURTROOM DEPUTY:  Thank you, ma'am.

25          THE COURT:  Now, Ms. Blair, as I told you

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    at the other hearing, you have a right not to say

2    anything.  That means you have the right not to

3    testify today.  Do you understand that?

4            THE WITNESS:  Yes.  I just want to tell you

5    why I'm not going to go nowhere and --

6            THE COURT:  And I appreciate that, but the

7    minute you start saying anything Mr. Dale there, who

8    is prosecuting you gets to ask you questions that you

9    have to answer.  You can't just answer Mr. Currier's

10   questions and then go sit down.  He gets a right to

11   ask you questions.  Do you understand that?

12           THE WITNESS:  Can I just make a statement

13   to you?

14           THE COURT:  No, you cannot.  It's why I

15   warn people about testifying, because the minute he

16   asks you direct examination questions Mr. Dale gets

17   to ask you cross-examination questions.

18           Now, Mr. Currier can make a proffer on your

19   behalf, but if you testify, then he gets a chance to

20   ask you questions.

21           THE WITNESS:  Then I won't testify.

22           THE COURT:  Then you what?

23           THE WITNESS:  I won't testify.

24           THE COURT:  She does not want to testify

25   under that situation, Mr. Currier.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

 1          MR. CURRIER:  That greatly weakens a

 2    proffer or anything else I might offer, but we would

 3    proffer that she would testify that she is Mayra

 4    Blair, that is her address and so on, that she has no

 5    intention to do any harm to anyone and to make any

 6    contact or attempts to reach Ms. Ortiz by mail were

 7    done out of sympathy, not realizing, and contrary to

 8    my advice, that that would be interpreted as an

 9    effort to improperly influence her.

10          And I would note that she is a mother of

11    two children.  She has taken the great difficulty to

12    become a U.S. citizen, which involves a lot of

13    background checking, that she has no criminal record,

14    having never been convicted of anything, that she

15    has -- that her two daughters are in school with good

16    grades;

17          That her husband, although he is

18    undocumented -- she is -- as the State government's

19    witness testified, he has applied for and been

20    approved for an I-130 application as her husband, but

21    he does not now have a green card.

22          She is in fact a citizen who was

23    naturalized here, that she received the checks and

24    moneys that she did in the ordinary course of

25    business, that she went further in this business and

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    tried to -- and she met some people who were in the

2    tax preparer business, and they used her as a kind of

3    cachement (phonetic) pool to bring people in to have

4    this other preparer do their taxes, that under his

5    instruction she asked the people questions, filled

6    out the answers and sent the returns to him for

7    processing by his PTIN.

8         She would identify him by name and his

9    assistant, that she did not consciously violate any

10   law and that she has tried to rectify things by

11   herself acquiring a PTIN and doing things properly by

12   consulting a person who is in fact a CPA;

13        That she has a regular business with

14   employees and others, that she earned the money to

15   which there has been testimony legitimately, and that

16   these are commissions; that part of those profits are

17   to be used for things like paying for her home and

18   her children's schooling at a private Protestant

19   school -- Apostolic Academy, that she is a member of

20   that church;

21        And that she has no animus against, nor any

22   intention to do any harm to, Ms. Ortiz, that

23   Ms. Ortiz was an employee and until these matters

24   came out she thought a friend, that she thought

25   Ms. Ortiz was charged criminally and that she,

Electronically signed by Lynda Clark (601-377-188-1426)                229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Ms. Ortiz, did a number of things which are illegal

2    and that those things would qualify as a -- might be

3    illegal, but that she, Mrs. Blair, had no involvement

4    with those, that she did not make that altar, and

5    that the device was put -- the picture and the thing

6    were put up in fact by Ms. Ortiz.

7            And I think she is saying that she doesn't

8    want to testify I would assert respectfully because

9    the proper warning, which Your Honor properly gave,

10   has terrified her and the shortness of time for me to

11   try to explain what she faces while getting

12   everything else done is very hard.

13           I think she would assert, and I would hope

14   credibly, that she is not a danger to anyone and that

15   she has no intention of leaving the United States, a

16   country that she is doing a great deal to try to not

17   only be a citizen of but be a good citizen of.

18           And that would be our proffer.

19           THE COURT:  All right.  You may step down.

20   Thank you.

21           MS. BLAIR:  Thank you.

22           THE COURT:  All right.  Any other

23   witnesses, Mr. Currier?

24           MR. CURRIER:  No, sir.

25           THE COURT:  All right.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. CURRIER:  We request a brief closing

2    argument at the appropriate time.

3          THE COURT:  All right.  Closely argument,

4    Mr. Dale.

5          CLOSING ARGUMENT BY MR. DALE

6          MR. DALE:  Your Honor, it's a fairly

7    straight-forward case here.  As the Court knows, we

8    are seeking to demonstrate that Ms. Blair is a flight

9    risk, and she is a danger to the community in that

10   her actions would seek to intimidate witnesses --

11   prospective witnesses.  And both of these have been

12   demonstrated in this case as offered in the proof

13   here today.

14         The evidence against her of the charges is

15   very strong as Special Agent Grove has testified.

16   Ms. Ortiz was charged with a similar offense --

17         THE COURT:  Is that a factor for me to

18   consider?

19         MR. DALE:  It is, Your Honor.

20         THE COURT:  Which part of the factors is

21   that?

22         MR. DALE:  Well, I think it's implicit in

23   there that it's one factor that the Court must

24   consider, the strength of the charge and the strength

25   the evidence against the defendant.

Electronically signed by Lynda Clark (601-377-188-1426)          229d09fc-df83-4b83-8c7b-0f2432adc2c0

1              THE COURT:  Okay.

2              MR. DALE:  I could grab the book and go

3    through it and find that.  But that's what I

4    understand part of the factors to be.

5              THE COURT:  3142(g), the second factor is

6    the weight of the evidence against the person.

7              MR. DALE:  Yes, that's what I'm getting at.

8              THE COURT:  Yeah, I used to think that too,

9    and Judge Martin in the Sixth Circuit said we're both

10   wrong, that is not what that means.  I may disagree

11   with him, but he said that's not what that means.

12             MR. DALE:  Okay.

13             THE COURT:  It means the weight of evidence

14   of flight or the weight of the evidence of danger.

15             MR. DALE:  Okay.

16             THE COURT:  So I'm not sure the weight of

17   the evidence of the charges is a factor anymore.

18             MR. DALE:  Okay.  Well, in terms of the

19   weight of the evidence of flight --

20             THE COURT:  Uh-huh.

21             MR. DALE:  -- we have shown that she has

22   close contact with individuals who are citizens of

23   Mexico.  She is from Mexico herself.  She made

24   several references to Mexico in the letters to

25   Ms. Ortiz, including expressing an interest in

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    bailing out Ms. Ortiz and then going to Mexico --

2    going to Mexico and continuing the plan that they

3    had.  Likewise the reference to Tepito, Mexico.  Her

4    husband, as we know is an illegal immigrant and is

5    from Mexico likewise.

6          And so there is certainly an incentive for

7    her to flee the country if given the opportunity to

8    do so.  She has the means to do that.  She has the

9    money to do that, the ability to do that.  And the

10   fact that she doesn't have a passport or if she has

11   one, that she would surrender her passport, would not

12   stand as an impediment of any kind.

13          As Mr. Vincente told the Court, crossing

14   into Mexico is not a difficulty at all.  She can

15   certainly do that, and she could certainly get away

16   by doing so.  As the Court is aware, there have been

17   numerous instances -- notable instances in this court

18   of individuals facing charges who did flee.  And I

19   would note Leslie Janis as an example.  Tamral Guzman

20   is an example of people that were charged and decided

21   to flee rather than the possibility of significant

22   jail time.

23          Likewise there is the risk of intimidation

24   of witnesses, because we see that has been going on

25   already, the attachment of Ms. Ortiz's picture to a

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

 1    Santa Muerta altar in Ms. Blair's office, the

 2    assertion that --

 3              THE COURT:  How is that intimidation of

 4    Ms. Ortiz if Ms. Ortiz put it there?

 5              MR. DALE:  Well, Ms. Ortiz did not put it

 6    there.

 7              THE COURT:  Well, that was the proffer from

 8    the defense, and your proffer was nobody knew who put

 9    it there.

10              MR. DALE:  Well, let's look at it

11    reasonably, though.  It was there yesterday, okay.

12    It was there on December either 14th or 16th, the day

13    that the search warrant was seized, and it was still

14    there yesterday.  You'd think that if Ms. Mayra

15    didn't want it there, she would have taken it down.

16    Instead the food offered to the dark Goddess has been

17    refreshed and replenished if you compare the pictures

18    one to the other.  Someone is certainly managing that

19    altar.  There's a 20-dollar bill attached to the

20    altar in the first picture, and there wasn't on the

21    picture the other day.

22              So Ms. Ortiz told agents by telephone that

23    Ms. Blair had attached her picture to this altar and

24    --

25              THE COURT:  Who testified to that?

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. DALE:  I thought Mr. Vincente did.

2          THE COURT:  Did Ms. Ortiz tell you that?

3    Did Ms. Ortiz tell you that Ms. Blair put her picture

4    there?

5          MR. VINCENTE:  I do not recall that part of

6    the conversation, Your Honor.

7          THE COURT:  I didn't think so.  Thank you.

8          MR. DALE:  I'm not going to swear myself in

9    and testify then.  If the agent can't say that, then

10   that's where it has to stand.

11         MR. CURRIER:  Then obviously we would raise

12   questions about being a witness and a lawyer in the

13   same proceeding.

14         MR. DALE:  I'm not going to do that.  I'm

15   just --

16         THE COURT:  He's saying he's not going to

17   do it.

18         MR. CURRIER:  Yes, sir.

19         MR. DALE:  And as Special Agent Grove has

20   testified, it has had the effect of intimidating

21   Ms. Ortiz.  The letters to her are to that effect as

22   well, the attempts to reach out and contact her minor

23   daughter, the attempts to reach out and talk to her

24   ex-boyfriend, on such a level that --

25         THE COURT:  Do you know what I noticed?

Electronically signed by Lynda Clark (601-377-188-1426)          229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. DALE:  Yes, sir.

2          THE COURT:  You knew exactly what she said,

3    but you never told me what it was.  So the fact that

4    they reached out to the daughter might say, "I'm

5    praying for you," or it might say, "If I find you,

6    I'm going to get you."  But, you know, you just said

7    they sent a communication and very specifically it

8    was a text.

9          MR. DALE:  Yes, sir.

10         THE COURT:  But I have no idea what it

11   says, so how can I know that it's intimidating?

12         MR. DALE:  Well, because of the fact

13   that --

14         THE COURT:  I'm going to assume if you know

15   what it is and you don't tell me, it's not

16   intimidating.

17         MR. DALE:  Well, Your Honor, I don't know

18   the substance of the text messages.  I know that they

19   were sent.  But, you know, I don't think that they

20   were threatening messages, but, of course, I don't

21   speak Spanish.

22         THE COURT:  Maybe it was an invitation to

23   the party.

24         MR. DALE:  Well, but it was such that they

25   decided to change their phone number to avoid having

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    such contacts made later.  They didn't want these

2    contacts.  Ms. Ortiz didn't want these contacts.  And

3    so that where --

4            THE COURT:  Does it strike you that I'm

5    going to have to decide to find in your favor all

6    this stuff that I'm getting second- and third-hand

7    from Ms. Ortiz, who isn't here?

8            MR. DALE:  Well, Your Honor, you have the

9    letters in front of you -- the letters are in

10   evidence -- and statements of two agents regarding

11   the emotional effect that has been had on her.

12           THE COURT:  Okay.

13           MR. DALE:  So based on the evidence we have

14   we think it is appropriate to detain Ms. Blair to

15   avoid her flight and to avoid further intimidation of

16   witnesses.

17           THE COURT:  What's the danger if I let her

18   out?

19           MR. DALE:  That she would continue to

20   contact people that are knowledgeable of this case.

21           THE COURT:  Has she contacted anybody other

22   than Ms. Ortiz?

23           MR. DALE:  Not to our knowledge but --

24           THE COURT:  And is Ms. Ortiz in custody?

25           MR. DALE:  She is, Your Honor.

Electronically signed by Lynda Clark (601-377-188-1426)          229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          THE COURT:  So she can't contact and

2     intimidate her.

3          MR. DALE:  Well, she can certainly attempt

4     to send letters to her.  And Ms. Ortiz knows that

5     she's reached out to her daughter and to her former

6     boyfriend -- to her family.  And so that's the

7     concern.  And then --

8          THE COURT:  Do you have any evidence that

9     she sent anything threatening or intimidating to

10    either her daughter or her boyfriend?

11         MR. DALE:  I do not.

12         THE COURT:  Any family?

13         MR. DALE:  I do not, but it's the fact of

14    the contact.  It's the fact that she even said in the

15    letter, "I've attempted to contact your daughter.

16    I've attempted to contact your former boyfriend."

17    Those are --

18         THE COURT:  Can't we resolve that by simply

19    putting a condition on her that there is to be

20    absolutely no contact?

21         MR. DALE:  Well, Your Honor, there are all

22    kinds of conditions out there, conditions that people

23    not break the law, that people not live in the

24    country illegally.  And people tend to violate those

25    rules.  So that --

Electronically signed by Lynda Clark (601-377-188-1426)          229d09fc-df83-4b83-8c7b-0f2432adc2c0

1        THE COURT:  If I assumed that, I'd never

2    let anybody out.

3        MR. DALE:  Well, that's true, but then also

4    there's a flight risk issue that is --

5        THE COURT:  Tell me about that.  What's the

6    reality of her being a flight risk?

7        MR. DALE:  Well, the reality is simply

8    getting in a car with money and either a false

9    identification or sufficient identification to cross

10   the border into Mexico where she has contacts to

11   avoid prosecution rather than facing the potential of

12   an 11- to 14-year prison sentence as it stands

13   presently.

14       THE COURT:  Okay.  All right.  Go ahead.

15   Anything else?

16       MR. DALE:  That's all I have for now.

17   Thank you.

18       THE COURT:  All right.

19       CLOSING ARGUMENT BY MR. CURRIER

20       MR. CURRIER:  I'm sorry in my rapid summary

21   I didn't say this, but it is a fact that I welcome

22   the government to oppose.  Ms. Ortiz's daughter's

23   birthday was in January, and the communication -- the

24   text to which they're referring was a wish of "Happy

25   Birthday."  And that seems entirely appropriate to a

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  lady who erstwhile was a friend of the family.

2         While it is true --

3         THE COURT:  Whose birthday was in January?

4         MR. CURRIER:  Ms. Ortiz's daughter.

5         THE COURT:  All right.  So you're

6  proffering --

7         MR. CURRIER:  I proffer that.

8         THE COURT:  -- as truth that I just guessed

9  right, that it was a text that said "Happy Birthday?"

10        MR. CURRIER:  No, I'm not proffering as

11 truth that you guessed right, but yes, you did guess

12 right.

13        THE COURT:  Okay.

14        MR. CURRIER:  But we have still the

15 presumption of innocence.  And that is one of the

16 things this Court is about.  Overwhelming bureaucracy

17 and government can do lots of things --

18        THE COURT:  I'm not deciding her guilt --

19        MR. CURRIER:  No, you're not.

20        THE COURT:  -- so you understand that.  So

21 that even if she is presumed innocent of these

22 charges, I'm not determining whether she's guilty of

23 the charges or not.  It's if I released her, that she

24 might flee.

25        MR. CURRIER:  Yes, sir.  And I will note

Electronically signed by Lynda Clark (601-377-188-1426)            229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   that we tendered to the Court, and the Court

2   accepted, a photocopy of a check, which unless I'm

3   instructed otherwise, I intend to turn over to the

4   company to deposit in its bank account in the normal

5   course of business.

6          That is not the action of someone trying to

7   hide, run.  The fruits of crime, the badges of

8   wrongdoing, are not present.  The sense of guilt or

9   desire to flee is not present.

10          It is said -- I think the cite is given to

11  Confucius -- that the guilty flee when no one

12  pursues.  This one woman did not flee.  She sought

13  advice from a lawyer and from an accountant and has

14  made an application for a government capability to

15  file tax returns.

16          THE COURT:  She didn't flee from what?

17          MR. CURRIER:  She was -- her property --

18  from here.  Her property was seized.  There was a

19  long search warrant that is of record.  The documents

20  that were taken have, for example, interfered with

21  her ability to file her own income taxes.

22          THE COURT:  When was the search warrant?

23          MR. CURRIER:  Last November if my memory

24  serves --

25          MS. BLAIR:  December.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. CURRIER:  December.  The government has

2     made reference to it, and I can proffer a copy,

3     although it is in the Court's records.

4          THE COURT:  Okay.

5          MR. CURRIER:  And so, Your Honor, I would

6     say they have not made the showing to overcome their

7     much smaller burden.  They haven't done that.  And

8     this woman has two daughters.  She is a regular

9     business woman.  She is in normal business.  She has

10    employees.  She is not hiding money.

11         And we are trying to get ready for trial,

12    which has been scheduled by Your Honor.  So we would

13    ask that the Court leave her free with the kinds of

14    conditions that are normal.  This is not someone who

15    has convictions, habit of crime, or anything else

16    like that.

17         And so I would suggest with respect that

18    she should be let free so that she can help defend

19    herself and so that the harm brought by all of this

20    on her, harm which I will ultimately hope to

21    demonstrate be unjustified, will be lessened, and so

22    that her ability to achieve the purpose that the

23    presumption of innocence is designed for, which is to

24    fight the case and go forward.

25         Thank you, Your Honor.

Electronically signed by Lynda Clark (601-377-188-1426)          229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          THE COURT:  What was I going to ask you?  I

2     have to think of it.  I'll ask you in a minute.

3          MR. CURRIER:  Yes, sir.

4          THE COURT:  All right.  Now, here is my

5     proposal.  I have two more hearings at least that I

6     have.  They've been waiting downstairs.  It shouldn't

7     take too long.  I'm proposed to do those right now,

8     and then I will review my notes.  And I'll give you

9     my decision on this as soon as I'm finished with

10    that.  Okay?

11         Is that okay with you, Mr. Dale?

12         MR. DALE:  That's fine.  Would you like us

13    to stay in the courthouse, or will your clerk just

14    call us when you're ready to issue your ruling?

15         THE COURT:  Yeah, why don't you stay here

16    in the courthouse -- if you want to go over to your

17    office, it will be about 30 minutes for me to at

18    least get these two done.  They're initial

19    appearances.

20         MR. CURRIER:  May my -- I'm sorry, Your

21    Honor.

22         THE COURT:  Yes, sir.

23         MR. CURRIER:  May my interpreter and, if

24    possible, my secretary go to the custody area with

25    the marshals and spend these 30 minutes talking to

Electronically signed by Lynda Clark (601-377-188-1426)                229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   Ms. Blair?

2           THE COURT:  Do the marshals have any

3   objection to that?

4           U.S. MARSHAL:  No.

5           THE COURT:  She'll have to go with them,

6   and you all will have to go around.

7           MR. CURRIER:  Yes, I understand.

8           THE COURT:  You can meet her down there,

9   yes.

10          MR. CURRIER:  We will do that.

11          THE COURT:  All right.  You may do that.

12          MR. CURRIER:  Thank you, Your Honor.

13          (A recess was taken.)

14          THE COURTROOM DEPUTY:  All rise.  This

15  court is again in session with the Honorable C.

16  Clifford Shirley, Jr., the United States Magistrate

17  Judge, presiding.

18          Please come to order and be seated.

19          THE COURT:  All right.  Before I get to my

20  decision I need someone to read me Exhibit 10.  I

21  don't care if it's Mr. Currier's interpreter.  I

22  don't care if it's Mr. Vincente.  I don't care who it

23  is, but I need somebody to read it and the other side

24  to follow along and be sure it's being interpreted

25  correctly.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. CURRIER:  Is Exhibit 10 the letter to
2     Ms. Ortiz or is that --
3          THE COURT:  It's the letter to Ms. Ortiz
4     from Ms. Blair.
5          MR. DALE:  That's Exhibit 10.
6          MR. CURRIER:  Right.  I don't have it.  I
7     trust this gentleman.  His name is Ramon Cordero.  He
8     is known to this court.
9          THE COURT:  You don't have Exhibit 10?
10         MR. CURRIER:  If I have it --
11         THE COURT:  Well, we'll make a copy.  Hold
12    on.  We'll make a copy for you, sir.
13         MR. CORDERO:  Thank you, Your Honor.
14         MR. CURRIER:  Thank you.  I have had no
15    discovery.
16         THE COURT:  Well, you should have been
17    provided a copy of every exhibit.
18         Did you not provide him copies of what you
19    admitted into evidence?
20         MR. CURRIER:  I gave him mine in advance.
21         MR. DALE:  I did not, Your Honor.
22         THE COURT:  Well, don't do that again.
23         MR. DALE:  That's all -- I thought that's
24    all we need to do is make them available that way.
25         THE COURT:  No.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. DALE:  Well, I can certainly do that.

2    I can make copies and get them to him.

3          THE COURT:  Well, we're doing it right now.

4          MR. DALE:  Okay.

5          MR. CURRIER:  That was why I was making

6    noises about copies, Your Honor.

7          THE COURT:  I don't remember you making

8    noises about that.  I got lost in the other noise.

9          (The courtroom deputy left the

10           courtroom to make copies.)

11          (The courtroom deputy returned to

12           the courtroom with copies.)

13          THE COURT:  Hand that to Mr. Cordero.

14          You'll need to have a microphone,

15    Mr. Cordero.

16          MR. CORDERO:  Yes, sir.  May the

17    interpreter have a moment to look through the --

18          THE COURT:  Absolutely.  Did you make a

19    copy for Mr. Currier?

20          THE COURTROOM DEPUTY:  No.  I just made a

21    copy for --

22          THE COURT:  Will you make another copy,

23    please.

24          THE COURTROOM DEPUTY:  Sure.

25          THE COURT:  You can look through it while

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  we're making --

2        Does anyone else want a copy?

3        MR. DALE:  I have copies.  They have my

4  notes on them, though.

5        THE COURT:  All right.  Let's have

6  Mr. Vicente follow along so I can be sure it's

7  accurate.

8        MR. CORDERO:  Does it matter what

9  microphone I use, Your Honor?

10        THE COURT:  No, it doesn't matter.  Just

11  wait a second.  I want Mr. Currier to have a copy.

12        THE COURTROOM DEPUTY:  (Handing.)

13        MR. CURRIER:  Thank you very much.

14        THE COURT:  All right.  Will you give me

15  your name, sir.

16        MR. CORDERO:  Ramon Cordero.

17        THE COURT:  All right.  Mr. Cordero, will

18  you read Exhibit 10, please.

19        MR. CORDERO:  "Hello.  It's me.  You are

20  not alone, nor have we abandoned you.  This is the

21  third -- this is my third letter that I have written,

22  but you have never replied.  I also went to see you

23  at the jail, but they did not -- but they told me

24  that I am not on the list.  Neither is Ana.  I have

25  put money for you so that you don't lack anything.

Electronically signed by Lynda Clark (601-377-188-1426)                229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Diana (phonetic) Manuel --"

2         And if the interpreter may, Your Honor, it

3    says [reading document out loud in Spanish], which

4    can be interpreted in a variety of ways, but the

5    interpreter understands it to be, "has lied about

6    us."

7         [Reading document out loud in Spanish.]

8    The interpreter does not want to interpret that one

9    last line, Your Honor, for lack of a clear

10   understanding of what it means.

11        THE COURT:  Well, what do you mean?  Just

12   read the words.

13        MR. CORDERO:  The words in their

14   combination mean nothing to the interpreter, Your

15   Honor.  I will attempt to read what it says as best I

16   can.

17        THE COURT:  Okay.

18        MR. CORDERO:  "-- has lied about us and has

19   been in communication with your family.  The things

20   are not as he has told you or as you believe.  Of

21   course, it's clear we have had -- we have had the

22   help.  It is just that we are waiting for your court

23   to see what -- or how we need to do.  Manuel has lied

24   to us and up until now -- [reading document out loud

25   in Spanish] "-- and up until now we have not been

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    able to know about you.  Do not lose faith and hope.

2    We're going to get out of this one."

3            I'm assuming that's Isaca (phonetic) "Isaca

4    and I do not stop asking about you.  I made my

5    promises, and I'm going to fulfill them.  And you

6    will see how this is going to be fixed.  Do not

7    listen to negative things nor believe that we are not

8    with you.  Remember that even though you do not see

9    God he is there.  Everyday I ask that you be calm and

10   that you not lack faith.  I do not know how things

11   are going for me still, but believe me that while

12   I -- but while I am still outside I am going to help

13   you.  I hope they give you bond so that you can sign

14   it -- so that I can sign it and get you out.  And if

15   I have to go to Mexico --" and again, Your Honor

16   there is a letter "X" on there.  I don't know what

17   the letter "X" stands for -- "if I have to go to

18   Mexico, up until there we have a plan.  But if you

19   are alone -- but you are not alone.  My mother is

20   waiting in the --" the abbreviation "-- MTY.  If we

21   need to and I would sign 10K if I have to for a bond.

22   I already have an attorney that after court is going

23   to help you -- [reading document out loud in

24   Spanish].

25           The last letters are not clear, Your Honor.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   "Do not believe that --" and then the last words are

2   not clear, Your Honor.

3          THE COURT:  All right.  Now, Mr. Vincente,

4   what do you say about that?  Did he do a good job?

5          MR. VINCENTE:  Your Honor, we have spent a

6   couple hours translating this verbatim as to make

7   sense.  There's a couple of things but for the

8   majority of it I will agree.  We have already a

9   written English version on the side, so it will be

10  very expeditedly (sic) that I will read this if the

11  Court will allow me to do so, sir.

12         THE COURT:  Well, I'm only interested

13  primarily in the part that starts most of the way

14  down that says, "I do not know how things are going

15  for me."

16         MR. VINCENTE:  Yes, Your Honor.  I found

17  that part here.  If I may, Your Honor?

18         THE COURT:  Go ahead.

19         MR. VINCENTE:  To speak on behalf of the

20  gentleman that was translating --

21         THE COURT:  Well, don't speak on his

22  behalf.  You just tell me what you say it says.

23         MR. VINCENTE:  Okay.

24         THE COURT:  Read it.

25         MR. VINCENTE:  [Reading document out loud

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    in Spanish.]

2            THE COURT:  No, no, no, no.  Read it in

3    English.

4            MR. VINCENTE:  Okay.  "I don't know what's

5    going on with me yet, but believe me while I'm

6    outside I'm going to help you.  I hope you get a bond

7    so I can sign and get you out if I have to and go to

8    Mexico for you.  Over there I will go, and then we

9    will have a plan."

10           Your Honor --

11           THE COURT:  Wait a minute.  "If I have to

12   and go to Mexico for you over -- what?

13           MR. VINCENTE:  "Over there I will go."

14   [Reading document out loud in Spanish.]

15           THE COURT:  Okay.

16           MR. VINCENTE:  Your Honor, that "X" symbol

17   means (speaking Spanish) "for you."  This is used a

18   lot to abbreviate in Spanish.

19           THE COURT:  Okay.

20           MR. VINCENTE:  Yes, Your Honor.

21           THE COURT:  Keep going.  "I will go --"

22           MR. VINCENTE:  "-- and over there for you I

23   will go, and we will have a plan."

24           THE COURT:  Okay.

25           MR. VINCENTE:  "But you are not alone.

Electronically signed by Lynda Clark (601-377-188-1426)                           229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Mama waits for you --" with that abbreviation of

2    "MTY."

3              THE COURT:  What's that?

4              MR. VINCENTE:  I have no idea, Your Honor.

5              THE COURT:  Okay.  Do you know, Mr. Dale?

6              MR. DALE:  Your Honor, I've never learned

7    any Spanish.  I have no idea what the MTY would mean.

8              THE COURT:  Do you know where her mom

9    lives?

10             MR. DALE:  Her mother according to the

11   pre-trial services report lives in Texas I believe.

12             Oh, "MTY" could mean Monterey, which is

13   where she was born.

14             THE COURT:  All right.  The only thing I

15   know abbreviated with three letters is airports; TYS

16   for Tyson-Magee; BNA for Nashville; MTY, Monterey,

17   Mexico.  So if nobody knows anything different,

18   that's my best guess.

19             MR. DALE:  Is MTY the abbreviation for

20   Monterey, Mexico?

21             THE COURT:  I think so.

22             MR. VINCENTE:  May I proceed, Your Honor?

23             THE COURT:  You may.

24             MR. VINCENTE:  Thank you, Your Honor.  I

25   will go back to that.

Electronically signed by Lynda Clark (601-377-188-1426)                                          229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          "My mother awaits for you in Monterey, and

2    if we have to, I will sign 10K.  It will be for if I

3    have to pay a bond.  We already have a lawyer that

4    after the court procedure it would help you."

5          THE COURT:  Okay.

6          MR. VINCENTE:  "Don't feel like we don't

7    know what's going on."

8          When I interpret that, Your Honor, [reading

9    document out loud in Spanish], she is addressing her

10   [reading document out loud in Spanish] "don't feel

11   like we don't know what's going on."

12         THE COURT:  Okay.

13         MR. VINCENTE:  That's what I perceive on

14   that last sentence, Your Honor.

15         MR. CURRIER:  I beg your pardon, Your

16   Honor, Mr. Cordero has quietly said to me that that

17   last is speculating.  May he explain that?

18         THE COURT:  Yeah, the part about having an

19   attorney really isn't the part that's of any moment

20   to me.

21         The question for you, Mr. Currier, is what

22   I do -- I thought that was going to be the whole

23   issue today -- we were going to have a detention

24   hearing -- to be honest with you, and I heard

25   absolutely nothing about it except two little

Electronically signed by Lynda Clark (601-377-188-1426)                229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   snippets after two or three hours.  I want to hear

2   you explain what I do with somebody who says, "I hope

3   I can get you out on bond, and we'll take off to

4   Mexico."

5               MR. CURRIER:  As the defendant has not

6   taken the stand, Your Honor, and hasn't been

7   questioned about this, I'm not sure, because I'm not

8   --

9               THE COURT:  I certainly don't expect her to

10  answer.  I expect you to answer Mr. Dale's argument

11  that that indicates flight.

12              MR. CURRIER:  Okay.  If I may have a moment

13  with my client, Your Honor.

14              THE COURT:  Oh, you may.

15              (A discussion was held off the record

16              between Mr. Currier and Ms. Blair.)

17              THE COURT:  All right.  While you're

18  thinking about that, on the fourth line up--

19              MR. CURRIER:  From the bottom, sir?

20              THE COURT:  Yeah, actually the fifth line

21  up from the bottom.  When we get to the word "bond"

22  --

23              MR. CURRIER:  Yes.

24              THE COURT:  -- I want you to again tell me

25  what that says, Mr. Vincente.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1              MR. VINCENTE:  "I hope they put bond so I

2     can sign [reading document out loud in Spanish] so I

3     can sign and get you out.  If I have to go to Mexico

4     for you, over there we'll go.  We have a plan,"

5     verbatim, Your Honor.

6              THE COURT:  Okay.  Do you agree with that,

7     Mr. Cordero -- that he read that right?

8              MR. CORDERO:  Yes, Your Honor.

9              THE COURT:  Okay.

10              MR. CORDERO:  And yes, with just one --

11     when it has an "X" -- as an interpreter and a

12     translator, I can never speculate as to what an "X"

13     would mean.  It could mean anything.

14              THE COURT:  Okay.

15              MR. CORDERO:  And so I'm not able to say

16     what that "X" would represent, but the essence of

17     what he has translated I believe to be correct.

18              THE COURT:  Okay.  Thank you very much.

19              So what do I do with that, Mr. Currier?

20              MR. CURRIER:  When we look at the date on

21     the letter, which was happily postmarked, and it

22     appears to be the 23rd of January of this year.

23              THE COURT:  Right.

24              MR. CURRIER:  At that time the addressee of

25     this was in jail, and my client was not in jail.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    Contrary to the assertions that there was an effort

2    to threaten her, this was an effort to show

3    solidarity and kindness and loving respect.

4              That having been said, I think it is an

5    effort to get bond, to assist, and not to engage in

6    criminal flight.  That would be I think a fair

7    reading of that, and I am not, and don't pretend to

8    be, a scholar of Spanish.

9              THE COURT:  I don't pretend to be either

10   and that's why I had two people read it to me.  But

11   what do I do with the part that says, Beyond I hope

12   to get you out on bond, but if I have to go to

13   Mexico, basically I will.  You're not alone.  Mom is

14   waiting in Monterey.

15             MR. CURRIER:  I think that we are taking

16   that in isolation, but I will try to address you

17   directly, Your Honor, because I understand the

18   question.

19             THE COURT:  Please.

20             MR. CURRIER:  I think that this is a

21   statement from a woman who is out, who is not

22   terribly well-educated, but who is trying to express

23   support and friendship for a woman she perceived to

24   be in a very horrible plight.  She of course did not

25   realize that this lady was in fact about to help the

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    government significantly with her case against her.

2          I don't think it implies that she was ready

3    to go to Mexico to flee for herself.  She was ready

4    to go to help Diana Ortiz in her situation.  I don't

5    see that as flight.

6          I would like if Your Honor makes a decision

7    based on that to suggest that there are technical

8    means -- what we used to call national technical

9    means -- to keep track of somebody rather readily.

10   Ankle bracelets come to mind.  But I don't --

11          THE COURT:  That's not quite as easy as you

12   think.  The anklet has to report to something.  It

13   has to report to a phone in the home, a landline, of

14   which she has none.

15          MR. CURRIER:  It's actually -- I accept

16   first of all what Your Honor has said, and getting a

17   landline is a matter of making the application to Ma

18   Bell, and normally that will happen rather quickly.

19          Second with regard to that, I observe that,

20   for example, several bonding companies in business in

21   this town have procedures whereby the reporting goes

22   to either local law enforcement or probationary

23   people or to the bonding agency telling people where

24   the beep, the electronic signal, is coming from.

25          Lastly, I would suggest that that is not

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    the only way.  Through her choice she has not

2    testified, but I would suggest that she's not

3    evidencing by her actions so far an intention to flee

4    to protect herself.  This whole letter was written

5    with an idea to assist Ms. Ortiz.

6            Now, the government chooses to view that

7    invidiously, but they were by the government's

8    proof -- I'm not sure this is accurate -- fellow

9    believers or practitioners of this particular

10   religion.  I suggest that there was no enmity before

11   all this started and none was intended on our side.

12           I did adduce evidence that the families

13   attended the social function together.  So I don't

14   think this is enmity to try to hurt nor an intention

15   on her part to flee any responsibility of hers but

16   rather taking on a perceived responsibility as a

17   friend and former employer.

18           Now, I frankly did not know MTY was

19   Monterey, and I not share Mr. Dale's lack of

20   knowledge of that.  Your Honor is to be congratulated

21   for knowing that.

22           But I think this is more a letter telling

23   Ortiz that if she will -- my client wishes to go

24   metaphorically to wherever she needs to go to get

25   help for her, not to flee from the jurisdiction of

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    the United States, and certainly not for my client to

2    flee the jurisdiction of the United States, for what

3    it is worth.

4            THE COURT:  Okay.  Thank you.

5            Mr. Dale.

6            MR. DALE:  Yes, Your Honor.  I don't know

7    that I can do much better in speculating on the

8    meaning of this document.  There's one person in the

9    courtroom that knows what it means, and we don't have

10   the advantage of that knowledge.

11           I would just say that this has to be viewed

12   in context, the context being that the middle of

13   December search warrants issued, numerous federal

14   agents coming through all the various offices, the

15   office on Kingston Pike, the office on Alcoa, seizing

16   documents, and even getting phone calls where

17   Mr. Currier was asking "What's going on with this

18   case?  What is this?"  And of course I can't comment

19   on an active investigation.  But that's the context

20   in which this was written to the person that was now

21   in custody and charged with an 18 U.S.C. 286 offense.

22           THE COURT:  When did Ms. Ortiz go into

23   custody?

24           MR. DALE:  She went into custody

25   immediately, the same day of the search warrant, the

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    14th or 16th of December -- the 16th of December,

2    Your Honor.

3           She made a statement to law enforcement,

4    which indicated a knowledge of -- or responsibility

5    for assisting in the preparation of falsified tax

6    returns.  And she was taken into custody that day

7    because she was in fact an illegal immigrant.

8           One thing I would point out to the Court is

9    in the line that's above the line that we had

10   translated, the line that said, "I hope they put a

11   bond on you --" right above that there is a sentence,

12   "I don't know what is going on with me, but while I

13   am outside I am going to help you -- while I'm

14   outside --" and again, we can't say what "outside"

15   meant, but our inference we drew from it is outside

16   and not in jail.  I'm not in custody.

17          So I think this is written in contemplation

18   that there were legal problems coming along and, you

19   know, we have a plan, and this plan appears to

20   involve going to Mexico.  That's all I'll speculate

21   on this.

22          THE COURT:  Thank you.  Now, Exhibit 9, the

23   other letter.

24          MR. DALE:  Yes, sir.

25          THE COURT:  Do you have that?

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          MR. DALE:  Yes, I do.

2          THE COURT:  Do you have a copy of that,

3   Mr. Currier?

4          MR. CURRIER:  No, sir, I do not.

5          THE COURT:  Okay.  Let's make a copy of

6   that.  I want to give Mr. Currier -- and make two

7   copies.

8          THE COURTROOM DEPUTY:  Okay.

9          MR. DALE:  I apologize.  This is an

10  oversight on my part.

11         THE COURT:  I'm getting two copies made.

12         MR. CURRIER:  May we just take a quick look

13  at it?

14         THE COURT:  Absolutely.

15         MR. CURRIER:  (Looking.)

16         Mr. Cordero points out that it is never a

17  good thing to translate a document on the fly, and

18  the Italians famously observed to translate is to

19  betray.  But that --

20         THE COURT:  The second may be true.  I

21  insist on the first everyday.  That's why my

22  interpreter is in court.  I know not what he speaks.

23         MR. CURRIER:  In my former life as a

24  foreign service officer, I was better able to respond

25  to that.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

 1          THE COURTROOM DEPUTY:  (Handing.)

 2          THE COURT:  All right.  I think I only want

 3     the first part of this read, but I will start with

 4     you, Mr. Cordero.  Would you read the first ten

 5     lines.

 6          MR. CORDERO:  "Do not sign any document."

 7     Then within parenthesis "POA" --

 8          THE COURT:  Wait a minute.  Exhibit 9 is

 9     also a letter from Ms. Blair to Ms. Ortiz.  Okay.

10     And it's dated after the other one.  It's dated I

11     think --

12          MR. DALE:  Your Honor, actually this is

13     the -- this preceded the other letter; 9 was before

14     10.

15          THE COURT:  What's the date on this one?

16          MR. DALE:  On the front it appears to be

17     the 23rd of January.

18          THE COURT:  Well, when you introduced it,

19     you introduced it as the 28th of January, and right

20     above the blacked-out part I see January 28th.  Am I

21     looking at the wrong thing?

22          Yeah, Exhibit 10 is January 23rd; I'll

23     agree with that.  Is this not Exhibit 9 with the

24     black-out?

25          MR. DALE:  It should be.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          THE COURT:  Okay.  What's it say right

2    above the black-out?

3          MR. DALE:  Well, it does say January 28th.

4          THE COURT:  Where does it say January 23rd?

5          MR. DALE:  The document that the

6    interpreter has right now does say January 28th on

7    the front of it.  So yes, that is correct.

8          THE COURT:  All right.  So Exhibit 10 was

9    January 23rd.

10          MR. DALE:  That's correct, Your Honor.

11          THE COURT:  So this one is after that?

12          MR. DALE:  That appears to be correct.

13          THE COURT:  Okay.  All right.  So now --

14    I'm sorry, Mr. Cordero -- if you would read it.

15          MR. CORDERO:  "Do not sign any documents,"

16    within parenthesis the letters "POA to Manuel."

17          THE COURT:  Do you have any idea what that

18    means?

19          MR. CORDERO:  No, Your Honor.  The

20    interpreter does not feel comfortable speculating as

21    to the significance of the abbreviation.

22          THE COURT:  Okay.

23          MR. CORDERO:  "Do not sign any documents,"

24    within parenthesis, "POA to Manuel.  Believe my

25    words.  I love you a lot.  I know that you will

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    understand these words.  A day does not go by when I

2    do not remember our conversations, and everyday I

3    continue reading our horoscope.  The love continues

4    to wait for you, and I hope that you do not get

5    confused -- is not the person that you believe."

6              THE COURT:  Who?  Who is "not the person?"

7              MR. CORDERO:  It does not say, Your Honor.

8              THE COURT:  Okay.

9              MR. CORDERO:  "-- is not the person that

10   you believe that is supporting you.  There will be

11   time to talk about that.  You know I'm going to go to

12   Tepito, Mexico."

13             THE COURT:  Enquanto esta?

14             MR. CORDERO:  Yes, Your Honor.

15             "With regard to this --"

16             Again, the combination of words, Your

17   Honor, do not -- is not written in proper Spanish,

18   but I will just read what it says.

19             "-- with regard to this pass in order to

20   complete one of my promises, and I'm going to close

21   Alcoa to fulfill the second and the third.  It's that

22   it's heavy.  You can only smell -- you can only smell

23   me --" and it has within parenthesis "ha-ha ha-ha".

24   You can only smell me but not touch."

25             THE COURT:  Okay.  That's good enough on

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    that I think.

2              Mr. Vincente, after the part about, "There

3    will be time to talk about that --"

4              MR. VINCENTE:  Yes, Your Honor.

5              THE COURT:  -- how do you read the next few

6    lines?

7              MR. VINCENTE:  You know, I am going to

8    Tepito."  And for what I understand, Your Honor, what

9    I know --

10             THE COURT:  Are you just reading out loud

11   or are you telling me stuff?

12             MR. VINCENTE:  I'm speaking to you, Your

13   Honor.

14             THE COURT:  I want you to read to me.

15             MR. VINCENTE:  Understood, Your Honor.

16             THE COURT:  I just want to hear Ms. Blair's

17   words, not yours.

18             MR. VINCENTE:  Yes, Your Honor.

19             "You know I am going to Tepito, Mexico once

20   this passes to keep my first promise -- one of my

21   promises.  I'm also going to close Alcoa to keep my

22   second one.  And the third one is The Fat -- he can

23   only smell me" in parenthesis "he-he-he, but he can't

24   touch me."

25             THE COURT:  Okay.  Any possible idea what

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1   that means, that last part?

2          MR. DALE:  Go ahead, yes.

3          Your Honor, I think Mr. Vincente could talk

4   about that in light of our conversation with

5   Ms. Ortiz yesterday.

6          THE COURT:  All right.  Briefly.

7          MR. VINCENTE:  Very briefly, Your Honor,

8   yes.

9          As we were revising this letter in talking

10  to Ms. Ortiz, in reference to the letter, Your Honor,

11  El Gordo, as per Ms. Ortiz's conversation, is

12  referring to Ms. Mayra's ex-companion, Your Honor.

13         THE COURT:  So to you it says, "The third

14  one is The Fat --

15         MR. VINCENTE:  El Gordo.

16         THE COURT:  -- he can only smell me?"

17         MR. VINCENTE:  Yes, Your Honor.

18         THE COURT:  All right.  Hold on a second.

19         (a discussion was held off the record

20         between the Court and the law clerk.)

21         THE COURT:  Here's my ruling on this.  I'll

22  just talk out loud as I go through it.

23         As I look at the factors, 3142(g) factors,

24  and I evaluate this under the statutory guidelines, I

25  don't find that the government has made a case for

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  danger.  The only allegations of danger that the

2  government has seriously argued is with regard to

3  Ms. Ortiz, but a couple of those things argue against

4  that.

5          First off, these letters appear to be

6  letters of great affection for Ms. Ortiz and a desire

7  to help her.  They of course were introduced by the

8  government.  All the evidence about the Santa Muerte

9  issue seems to have been for naught in light of the

10  testimony that Ms. Ortiz herself said, that with

11  regard to the picture before she went into jail she

12  thought that was a good thing -- that picture was

13  being put there as a good thing, as a typical

14  location of a picture on a statue for blessings.  It

15  was only after she had a conversion in the jail that

16  she began to believe that was for harm.

17          So while we don't know who actually put

18  that picture there it appears that it was originally

19  put there as a good thing, and it hasn't moved.  Now,

20  her perception of it and her perception of Santa

21  Muerte has changed, but I don't think that that

22  indicates that it was done in the first instance as

23  some sort of intimidation or black magic or

24  witchcraft or anything like that.

25          In any event, I don't find that the

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    government has made a case for danger to the level

2    required under the statute, which is clear and

3    convincing evidence.

4         The other issue is much more difficult, the

5    issue of a flight risk.  First off, the government's

6    standard to prove that is much lower.  It's only a

7    preponderance Of the evidence.

8         Now, admittedly looking at the factors, the

9    first factor, the nature and the circumstances of the

10   offense charged, this isn't one of those cases that

11   are itemized in the statute, nor is it the type of

12   charge that Congress intended that the Court weigh in

13   favor of detention.  So the first factor seems to

14   argue in favor of release.

15        The second factor is the weight of the

16   evidence against the defendant.  And although I

17   shared Mr. Dale's original thoughts about what that

18   meant, since the Stone case came out of the Sixth

19   Circuit and since we've had a couple rulings in this

20   Court, it appears that that means the weight of the

21   evidence, in this case of flight.  We'll get to that

22   in a minute.

23        I get to the history and characteristics of

24   the defendant, and most all those would seem to argue

25   in favor of her release.  She has no criminal

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1  history, no history of drug or alcohol abuse.  She

2  has some community ties.  She's been in the community

3  for awhile.  She's employed.  She has family ties

4  here.  No evidence she's skipped any court

5  appearances.  And it appears she wasn't on any kind

6  of probation or parole at the time of the alleged

7  offense.

8          So I'm sort of left with these two letters,

9  and what do they say, and what do they mean.  And I

10  apologize for taking up time, but I thought that was

11  the main issue.  And as I went back through it, it

12  appeared to be the main issue to me, because I don't

13  have a good, satisfactory explanation for what it

14  means other than almost what it says, which as I read

15  it, putting the two letters together, the first

16  letter indicates, "I have made my promises and I'm

17  going to fulfill them.  You'll see how this is going

18  to be fixed."

19          The second letter a couple days later

20  indicates what those promises are and again says, I

21  will keep my promises.  One, I'm going to wherever

22  this place is in Mexico.  It's spelled T-e-p-i-t-o,

23  Tepito, Mexico.

24          Number two, I'm going to close Alcoa, which

25  I assume is the Alcoa store.  And number three,

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    something regarding a former companion named El

2    Gordo.  You can guess about that.

3           When we go back to the first letter a few

4    days earlier -- and I took into account what

5    Mr. Currier said, that she hasn't shown any actions

6    of flight through her actions -- she indicates,

7    "Though I do not know how things are going for me

8    yet, but while I'm still on the outside I'm going to

9    help you."

10          That's okay.  I do disagree with

11   Mr. Currier when he says she's not a very well-

12   educated woman.  It appears she's been very

13   successful in her business, and you produced checks

14   to show how successful she has been.

15          And then it says, I hope they give you bond

16   so I can basically pay for it, and then it says, If I

17   have to go to Mexico for you, over there I will go.

18   We have a plan.  You are not alone.  Mom is waiting

19   for you in MTY, capital letters.  Again, the only

20   thing I know of capital letters MTY would be an

21   airport in Monterey.

22          It sounds for all the world to me like a

23   plan to get somebody out on bond and fly them to

24   Mexico, and if necessary, she will go with them.  It

25   further indicates it's a promise she has made to go

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1    to Mexico and to close down her business.

2          Now, the reason I can't just discount that

3    and the weight I have to give to it is it's in the

4    defendant's own handwriting.  It's not somebody

5    saying they think she might do this.  It's simply her

6    saying she's promising to do this for somebody she

7    really cares for, one more example why the danger

8    argument fails.

9          But in this case I'm finding that these two

10   letters in her words are sufficient to tip the scales

11   in favor of detention.  I find that they are such

12   that they indicate a plan to flee.  She already has

13   an incentive to flee.  She has a 32,000-dollar check

14   sitting there that hasn't been cashed.  There's

15   opportunity alone to flee.  I see from this in my

16   estimation she has a plan in effect, and the only

17   thing lacking is opportunity, which I would give her

18   if I released her.

19         So for those reasons I find she would be a

20   risk of flight.  I also don't find that there are any

21   conditions or combination of conditions that I can

22   place on her that would reasonably assure me that she

23   wouldn't attempt to flee and/or be successful.  It

24   sounds like she's already thought about it, planned

25   it, and would be likely to do it if I let her.

Electronically signed by Lynda Clark (601-377-188-1426)                                        229d09fc-df83-4b83-8c7b-0f2432adc2c0

1          So for whatever it's worth that's my

2    ruling.  And of course, Mr. Currier, my rulings can

3    be appealed to the District Judge.  But I'm finding

4    no proof of danger but adequate proof of flight.

5          All right.  So that means unfortunately --

6    unfortunately, Ms. Blair, that means that you have to

7    remain in custody --

8          MS. BLAIR:  I didn't say that.

9          THE COURT:  -- under my rulings.

10         All right.  Is there anything else,

11   Mr. Dale?

12         MR. DALE:  Nothing further, Your Honor.

13         THE COURT:  Anything else, Mr. Currier?

14         MR. CURRIER:  Obviously my client is

15   distraught, and part of this I would lay at my own

16   door because given the rush -- which I am

17   responsible -- to get this done, I may not have

18   counseled her adequately to prepare her for court.

19         I would observe that as Your Honor was kind

20   enough to note, the arguments I made about her

21   factual actions and so on and such, I wish Your Honor

22   of course would have decided differently than Your

23   Honor has decided.

24         I wish we could revisit this at some point

25   if I'm instructed to appeal.

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0

1            THE COURT:  I'm not instructing you to

2   appeal.

3            MR. CURRIER:  No, no.

4            THE COURT:  I'm advising you of your right

5   to appeal.

6            MR. CURRIER:  No, no.  If my client

7   instructs me to appeal.

8            THE COURT:  I got it.

9            MR. CURRIER:  I was not attempting to

10  assert anything to the Court.  So we will --

11           THE COURT:  Anything else legally,

12  Mr. Currier?

13           MR. CURRIER:  No, sir.

14           THE COURT:  All right.  There being nothing

15  further, Ms. Blair, you will go with the marshals.

16  They'll take you with them and bring you back for

17  trial.

18           (End of Proceedings.)

19

20

21

22

23

24

25

Electronically signed by Lynda Clark (601-377-188-1426)                229d09fc-df83-4b83-8c7b-0f2432adc2c0

1                    REPORTER'S CERTIFICATION

2     STATE OF TENNESSEE   )

3     COUNTY OF KNOX        )

4         I, LYNDA L. CLARK, LCR #034, RMR, CRR, Court

5     Reporter and Notary Public, in and for the State of

6     Tennessee, do hereby certify that the above Court

7     Hearing was reported by me, transcribed by me, and

8     that the foregoing 165 pages of the transcript is a

9     true and accurate record to the best of my knowledge,

10    skills, and ability.

11        I further certify that I am neither kin nor of

12    counsel to any of the parties, nor in any way

13    financially interested in the outcome of this case.

14        I further certify that I am duly licensed by the

15    Tennessee Board of Court Reporting as a Licensed

16    Court Reporter as evidenced by the LCR number and

17    expiration date following my name below.

18        IN WITNESS WHEREOF, I have hereunto set my hand

19    and affixed my Notarial Seal this 2nd day of April,

20    2015.

21                          _____
                            LYNDA L. CLARK, LCR #034
22                          Expiration Date:  06/30/16
                            N.P. Commission Expires:  8/29/15
23                          Miller & Miller Court Reporters
                            12804 Union Road
24                          Knoxville, Tennessee  37934
                            Phone:  865-675-1471 / 675-6398
25                          E-mail:  JMccon3590@aol.com

Electronically signed by Lynda Clark (601-377-188-1426)                    229d09fc-df83-4b83-8c7b-0f2432adc2c0